DOCUMENT ELECTRONICALLY FILED
ORAL ARGUMENT REQUESTED

Ronald J. Levine, Esq.
rlevine@herrick.com
Jonathan E. Luick, Esq.
HERRICK, FEINSTEIN LLP
210 Carnegie Center
Princeton, New Jersey 08540
(609) 452-3800
Attorneys for Defendant Unilever United States, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ———————————————————— x | |
| MATHEW ERCOLINE, on behalf of himself and all others similarly situated, : | Civil Action No.: 2:10-cv-01747-SRC-MAS |
| Plaintiff, : | |
| vs. : | |
| UNILEVER UNITED STATES, INC. : | |
| Defendant. : | |
| ———————————————————— x | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT UNILEVER UNITED STATES, INC.'S
## MOTION TO DISMISS

HERRICK, FEINSTEIN LLP
210 Carnegie Center
Princeton, New Jersey 08540
(609) 452-3800
Attorneys for Defendant
Unilever United States, Inc.

On the Brief:      Ronald J. Levine, Esq.
                   Jonathan E. Luick, Esq.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ALLEGED IN THE COMPLAINT..............................3

OVERVIEW OF PLAINTIFF'S CLAIMS ............................................................4

LEGAL STANDARD .......................................................................................12

ARGUMENT ...................................................................................................13

POINT I:    PLAINTIFF HAS FAILED TO PLEAD AN INJURY
SUFFICIENT TO CONFER ARTICLE III STANDING........13

POINT II:   PLAINTIFF'S CLAIMS ARE PREEMPTED ........................17

    A.    Plaintiff's Claims Are Expressly Preempted............................17

    B.    Plaintiff's Claims Are Impliedly Preempted............................19

POINT III:  PLAINTIFF'S COMPLAINT IS INSUFFICIENTLY
PLED AND MUST BE DISMISSED ......................................20

POINT IV:  PLAINTIFF FAILS TO STATE A CLAIM UNDER
THE NEW JERSEY CONSUMER FRAUD ACT .................21

    A.    Plaintiff, a Massachusetts Resident Who Purchased
Smooth & Dreamy in Massachusetts and Allegedly
Suffered Injury In Massachusetts, Cannot Bring an Action
Under the NJCFA .................................................................21

    B.    Plaintiff's Recital of the Elements of an NJCFA Claim Does
Not State a Claim Under Fed. R. Civ. P. 9(b)..........................24

1.      The Complaint Fails to Adequately Allege Unlawful
        Conduct ........................................................................... 25

2.      Plaintiff Fails to Plead an Ascertainable Loss ............... 29

C.      Plaintiff's NJCFA Claim Fails Due to the FDA's
        Comprehensive Regulation of Food Labeling ........................ 32

POINT V:    PLAINTIFF FAILS TO STATE A CLAIM FOR
            BREACH OF EXPRESS WARRANTY ................................. 33

A.      Plaintiff's NJUCC Claim Fails Because the New Jersey
        Statute Does Not Apply Here .................................................... 33

B.      Plaintiff Fails to Sufficiently State a NJUCC Claim ................ 35

POINT VI:   PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST
            ENRICHMENT ........................................................................ 37

POINT VII:  PLAINTIFF FAILS TO STATE A CLAIM FOR
            INJUNCTIVE RELIEF .......................................................... 39

CONCLUSION ...................................................................................... 40

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496
(D.N.J. 2006)...............................................................................33

Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437 (D.N.J. 2009)............23, 34

Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282 (D.N.J. 2009) .............25, 30

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).............................................13, 20, 21

Ballentine v. United States, 486 F.3d 806 (3d Cir. 2007)..................................12

Bell Atlantic v. Twombly, 550 U.S. 544 (2007).........................................13, 21

Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001)......................19

Chrysler Corp. v. Brown, 441 U.S. 281 (1979) .................................................12

Cipollone v. Liggett Group, Inc., 683 F. Supp. 1487 (D.N.J. 1988)………...……34

Cooper v. Samsung, Civ. No. 07-3853 (JLL), 2008 WL 4513924
(D.N.J. Sep. 30, 2008), aff'd, No. 08-4736, 2010 WL 1220946
(3d Cir. Mar. 30, 2010) ...............................................................23, 37, 38

Cytyc Corp. v. Neuromedical Systems, Inc., 12 F. Supp. 2d 296
(S.D.N.Y 1998)…………………………………………………………..28

D'Alessandro v. Hartford Life and Acc. Ins. Co., Civ. No. 09-1115 (JAP),
2009 WL 1228452 (D.N.J. May 1, 2009)................................................25

Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005) .......13
In re Digitek Prod. Liab. Litig., 2:08-md-1968, 2010 WL 2102330
(S.D. W.Va. May 25, 2010) ....................................................................24

In re Ford Motor Co., 110 F.3d 954 (3d Cir. 1997) ............................................ 22

Fraker v. KFC Corp., No. 06-CV-01284-JM (WMC), 2007 WL 1296571
    (S.D. Cal. Apr. 27, 2007) ........................................................ 19

Franulovic v. Coca Cola Co., Civ. Nos. 07-539, 07-828 (RMB),
    2007 WL 3166953 (D.N.J. Oct. 25, 2007).............................................. 29

Freeman v. Time, Inc., 68 F.3d 285 (9th Cir. 1995) ........................................ 27

Germain v. J.C. Penney Co., No. CV 09-2847(CAS), 2009 WL 1971336
    (C.D. Cal. July 6, 2009) ........................................................ 32

Harper v. LG Elec. USA, Inc., 595 F. Supp. 2d 486 (D.N.J. 2009).................. 24

Haskell v. Time, 857 F. Supp. 1392 (E.D. Cal. 1994) ...................................... 26

Hassler v. Sovereign Bank, 644 F. Supp. 509 (D.N.J. 2009),
    aff'd, No. 09-282, 2010 WL 893134 (3d Cir. Mar. 15, 2010)........... 26, 27

Heindel v. Pfizer, Inc., 381 F. Supp. 2d 364 (D.N.J. 2004) ................... 37, 39, 40

Hi-Tech Pharms., Inc. v. Crawford, 544 F.3d 1187 (11th Cir. 2008)............... 12

Holk v. Snapple Beverage Corp., 575 F.3d 329 (3d Cir. 2009) ......…...........19, 20

Jamison v. Klem, 544 F.3d 266 (3d Cir. 2008)................................................. 15

Koronthaly v. L'Oreal USA, Inc., No. 08-4625, 2010 WL 1169958
    (3d Cir. Mar. 26, 2010) ........................................................ 14

Laird v. Tatum, 408 U.S. 1 (1972). ……...…………………………………….14

Lebergern v. Forman, 471 F.3d 424 (3d Cir. 2006)........................................ 22

Levy v. Keystone Food Prods., Nos. 07-5502, 08-1277, 08-1554,
    2008 WL 4115856 (E.D. Pa. Aug. 27, 2008) ............................. 15, 16, 36

Lithuanian Commerce Corp. v. Sara Lee, 214 F. Supp. 2d 453
    (D.N.J. 2002)........................................................ 35

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)........................................ 16

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004) ............................................. 5

McKinniss v. General Mills, Inc., No. CV 07-2521 (GAF),
    2007 WL 4762172 (C.D. Cal. Sep. 18, 2007)...................................... 5, 35

Morgan v. Markerdowne Corp., 201 F.R.D. 341 (D.N.J. 2001)....................... 29

Morris County Cardiology Consultants, PA. v. Northwestern Mutual Life
    Insurance Co., Civ. No. 08-00308 (SRC),
    2009 WL 3068260 (D.N.J. Sep. 21, 2009) ........................................ 28, 32

Mortensen & First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977).......12

Naporano Iron & Metal Co. v. Am. Crane Co., 79 F. Supp. 2d 494
    (D.N.J. 1999)..................................................................................... 24

Nelson v. XACTA 3000, Civil Action No. 08-5426, 2006 WL 4119176
    (D.N.J. Nov. 24, 2009).......................................................................... 38

New York State Restaurant Assoc. v. New York City Bd. Of Health,
    556 F.3d 114 (2d Cir. 2009).................................................................... 17

Oshinsky v. N.Y. Football Giants, Inc., Civ. No. 09-1186 (PGS),
    2009 WL 4120237 (D.N.J. Nov. 17, 2009) ............................................ 20

Panitch v. Continental Airlines, Civ. No. 06-3611 (JAG), 2008 WL 906240
    (D.N.J. Mar. 31, 2008)......................................................................19

Parker v. Howmedica Osteonics Corp., Civ. No. 07-2400 (JLL),
    2008 WL 141628 (D.N.J. Jan. 14, 2008)................................................ 31

Payne v. Fujifilm U.S.A., Inc., No. 07-385 (GEB), 2010 U.S. Dist. LEXIS 52808
    (D.N.J. May 28, 2010) .......................................................................... 24

Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192
    (3d Cir. 1993) ......................................................................................... 5

In re PepsiCo, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................ 19

Premier Pork L.L.C. v. Westin, Inc., Civ. No. 07-1661 (JHR),
    2008 WL 724352 (D.N.J. Mar. 17, 2008) ................................................ 38

Prima v. Darden Rests, Inc., 78 F. Supp. 2d 337 (D.N.J. 2000) ....................... 39

Rait v. Sears, Roebuck, Civ. No. 08-2461 (JLL), 2009 WL 2488155
    (D.N.J. Aug. 11, 2009) .............................................................................. 20

Renz v. Shreiber, 832 F. Supp. 766 (D.N.J. 1993) .............................................. 5

Reyes v. McDonald's Corp., Nos. 06 C 1604, 06 C 2813,
    2006 WL 3253579 (N.D. Ill. Nov. 8, 2006) ............................................ 19

Sanders v. Rosenberg, No. Civ. No. 06-1406 (NLH), 2008 WL 1732980
    (D.N.J Apr. 10, 2008) ............................................................................... 28

In re Schering-Plough Corp., Civ. No. 06-5774 (SRC), 2009 WL 2043604
    (D.N.J. July 10, 2009) ................................................................... 14, 16, 39

Secure Energy v. Coal Synthetics, No. 4:08 CV 1719 (JCH),
    2010 WL 1692192 (E.D. Mo. Apr. 27, 2010) ......................................... 40

Shepard v. Dineequity, No. 08-2416, 2009 U.S. Dist. LEXIS 97245
    (D. Kan. Sept. 25, 2009) ........................................................................... 17

Shogen  v. Global Aggressive Growth Fund, Civ. No. 04-5695 (SRC),
    2007 WL 1237829 (D.N.J. Apr. 26, 2007) ............................................. 37

Solo v. Bed Bath & Beyond, Inc., Civ. No. 06-1908 (SRC),
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) ............................................. 31

Thabault v. Chait, 541 F.3d 512 (3d Cir. 2008) ................................................ 21

In re Toshiba Am. HD DVD Mktg. & Sales Practices, Civ. No. 08-939 (DRD),
    2009 WL 2940081 (D.N.J. Sep. 11, 2009) ........................................ 20, 26

Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003) .............. 14

Wright v. Gen. Mills, Inc., Civ. No. 08-cv-1532, 2009 WL 3247148
    (S.D. Cal. Sep. 30, 2009) .................................................................. 20,21

Yost v. Gen. Motors Corp., 651 F. Supp. 656 (D.N.J. 1986)..................... 34

Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987)........... 13

## STATE CASES

Bosland v. Warnock Dodge, Inc., 197 N.J. 543 (2009) ..................................... 27

Buff v. Giglio, 124 N.J. Super. 94 (App. Div. 1973) ......................................... 37

Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105
    (App. Div. 1966) ....................................................................... 38

Dabush v. Mercedes-Benz, USA, 378 N.J. Super. 105
    (App. Div. 2005) .................................................................. 29, 30

F. Bender Inc. v. Jos. L. Muscarelle, Inc., 304 N.J. Super. 282
    (App. Div. 1997). .................................................................... 39

Fink v. Ricoh Corp., 365 N.J. Super. 520 (Law Div. 2003) ....................... 22, 28

Furst v. Einstein Moomjy, Inc., 182 N.J. 1 (2004) ........................................... 31

Holtzman v. Gen. Motors Corp., No. 021368, 2002 WL 1923883
    (Mass. Super. Ct. July 2, 2002).................................................34

International Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck &
    Co., 192 N.J. 372 (2007)........................................................... 24

Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255 (1997)................. 33

New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8
    (App. Div. 2003) ...................................................................... 33

P.V. v. Camp Jaycee, 197 N.J. 132 (2008) ..................................................... 22

Real v. Radir Wheels, 198 N.J. 511 (2009)...................................................... 32

Rey v. County of Hunterdon, No. HNT-L-599-03, 2005 WL 2439697
(N.J. Super. Ct. Law. Div. Sept. 23, 2005) ............................................... 37

Romano v. Galaxy Toyota, 399 N.J. Super. 470 (App. Div. 2008) .................. 31

Simpson v. Widger, 311 N.J. Super 379 (App. Div. 1998) .............................. 35

Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555 (1985).......... 36

Stoecker v. Echevarria, 408 N.J. Super. 597 (App. Div. 2009) ....................... 25

Thiedemann v. Mercedes-Benz, 183 N.J. 234 (2005)............................29

Turf Lawnmower Repair Inc. v. Bergen Record Corp., 139 N.J. 393
(1995) ...............................................................................................26, 28

VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994)..................27, 38

## **STATUTES**

21 CFR 101.13............................................................................ 5, 7, 10, 11

21 CFR 101.56............................................................................ 6, 7, 8, 11

21 CFR 130.10.................................................................................6

21 CFR 135.110.................................................................................6

56 Fed. Reg. 60421 (Nov. 27, 1991) ................................................... 11

56 Fed. Reg. 2149 (Jan. 22, 1991).................................................... 7

58 Fed. Reg. 520 (Jan. 6, 1993).......................................................... 6

Fed. R. Civ. P. 8.................................................................................2

Fed. R. Civ. P. 9(b).............................................................................2, 24

Fed. R. Civ. P. 12(b)(1) ....................................................................... 12

Fed. R. Civ. P. 12(b)(6) ……………………………………...…5, 12

Fed. R. Civ. P. 23(b)(2)………………………………………....4

M.G.L.A. c. 93A, §§ 1 *et seq*.……………………………...…… 22

M.G.L.A. c. 106, § 2-607(3)(a)…………………………..………34

N.J.S.A. 12A:2-101………………………………………………33

N.J.S.A. §§ 56:8-1 *et seq*. ......................................................  1, 22

N.J.S.A. § 56:8-2 ...............................................................…… 25

Nutrition Labeling and Education Act of 1990 ("NLEA")
   Pub. L. No. 101-535 § 6 (c)(1)…………………………………17

21 U.S.C. §§ 301 *et seq*. ...................................................... 17

21 U.S.C. § 337 .................................................................... 19

21 U.S.C. § 341 .................................................................... 5

21 U.S.C. § 343 .................................................................... 17

21 U.S.C. § 343-1 ..............................................................2, 17, 18, 19

## **OTHER**

Article III, § 2 of the United States Constitution ................................. 13

Office of Nutrition, Labeling, and Dietary Supplements, Food and Drug Admin.,
Guidance for Industry: A Food Labeling Guide, VIII. (Claims), 2008 ......11, 12

Restatement (Second) of Conflict of Laws § 148 (1971)  ................................23

Restatement (Second) Conflict of Laws § 188 (1971) ........................................34

## PRELIMINARY STATEMENT

Plaintiff Mathew Ercoline ("Plaintiff") allegedly purchased two flavors (Butter Pecan and Cookies & Cream) of Breyers Smooth & Dreamy Light Ice Cream ("Smooth & Dreamy").   Plaintiff's core theory is that Defendant Unilever United States, Inc. ("Unilever") violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.*, breached an express warranty, and unjustly enriched itself by stating on its label that Smooth & Dreamy contains "1/3 fewer calories than regular ice cream."   Plaintiff alleges (incorrectly) that the "regular ice cream" referenced on the label is Breyers All Natural Original brand ("Original"), and the label is therefore false since Smooth & Dreamy does not have 1/3 fewer calories than the Original brand. (Complaint ("Compl.") ¶ 1).

Plaintiff's claims necessarily rely upon a flawed (and, frankly, disingenuous) construction of the Smooth & Dreamy label.  In accordance with the Food and Drug Administration's ("FDA") strict labeling requirements, the label compares the "light ice cream" in the container with the general category of "regular ice cream" – that is, a general category that consists of full-fat ice creams. As specifically provided for by FDA regulations, the calorie content for this category of "regular ice cream" is based upon a "market basket" of three leading regular ice cream brands that are representative of the broad base of regular ice

cream, of which Smooth & Dreamy ice cream has an average of 1/3 fewer calories than the market basket. Moreover, the FDA has expressly endorsed the use of "regular" on labels for purposes of referring to a market basket of representative foods. Further pursuant to FDA regulations, the label is not required to define the word "regular" other than to set forth the level of fat and calories in the market basket of representative foods, **which the label does.** In short, if Plaintiff had read the Smooth & Dreamy label, he would have seen the level of calories in both the Smooth & Dreamy light ice cream **and** regular ice cream flavors. and would have known his claims were bogus.

Moreover, not only does the label comply with the strict FDA labeling requirements, but Plaintiff also fails to plead any legally cognizable claims. First off, he has suffered no injury-in-fact, and thus does not have the requisite standing to sue. Further, his claims are preempted by the federal food and drug laws as codified in 21 U.S.C. §343-1. Additionally, as a Massachusetts resident who purchased the light ice cream at issue in Massachusetts, the NJCFA is not applicable. Finally, Plaintiff has failed to plead the requisite elements of a private-party claim under the NJCFA, or under his other theories. Instead, this Complaint propounds the very kind of threadbare recitals and conclusory statements that are no longer sufficient under Fed. R. Civ. P. 8, no less Rule 9(b) and should be dismissed.

## STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

On March 25, 2010, Plaintiff, a citizen of Massachusetts, allegedly purchased two flavors (Butter Pecan and Cookies & Cream) of Smooth & Dreamy, in Medford, Massachusetts, for a total price of $5.98. (Compl. ¶¶ 3, 29). On April 6, 2010, less than two weeks after he purchased the light ice cream, Plaintiff filed this putative class action against Unilever, the company which markets and sells Smooth & Dreamy.[1]

Plaintiff's claims are based entirely on a statement on the Smooth & Dreamy label, which reads: "1/2 THE FAT … 1/3 FEWER CALORIES THAN REGULAR ICE CREAM[.]" For the purposes of his Complaint, Plaintiff defines "Regular Ice Cream" to mean Breyers Original brand ice cream. (Compl. ¶ 1.) Plaintiff alleges that "[n]one of the Smooth & Dreamy Ice Cream flavors contain 1/3 fewer calories than their respective Regular Ice Cream flavors." (Id. ¶ 18.) Plaintiff asserts that a comparison of eight Smooth and Dreamy flavors with their "Regular Ice Cream counterpart[s]" demonstrates that Smooth & Dreamy has on average only 14.2% fewer calories than "Regular Ice Cream," as Plaintiff defines the term.[2] (Id. ¶ 20.)

---

[1]    Plaintiff mistakenly names Unilever United States, Inc. as the defendant in this action. Breyers brand ice cream is manufactured and marketed by Conopco, Inc. d/b/a Unilever.

[2]    Plaintiff does not identify the origin of the calorie counts referenced in the table in Paragraph 19 of the Complaint comparing the calories in eight Smooth & Dreamy flavors with the calories in eight flavors of "Regular Ice Cream."

The crux of Plaintiff's claims is the allegation that "[a] reasonable consumer would understand -- and Plaintiff did understand -- [Unilever's] 1/3 comparison on the Smooth & Dreamy Ice Cream box to be between [Smooth & Dreamy light ice cream] and [Unilever's] Regular Ice Cream version."  (Id. ¶ 26.) Plaintiff claims that the alleged misstatement of the comparative calorie count by Unilever induced Plaintiff to buy the two flavors of Smooth & Dreamy.  (Id. ¶ 27.) Plaintiff further claims that he "suffered an ascertainable loss of $5.98," the purchase price of the light ice cream, and that Plaintiff (and other prospective members of the putative Class) "would not have purchased the Smooth & Dreamy Ice Cream but for Defendant's misstatement . . ." . (Id. ¶¶ 30-31.)  On this basis, the Complaint, which is styled as a putative class action pursuant to F.R.C.P. 23(b)(2), asserts claims for violations of the NJCFA (Count I) and the express warranty provisions of the New Jersey Uniform Commercial Code ("NJUCC") (Count II), as well as claims for unjust enrichment (Count III) and injunctive relief (Count IV).

## OVERVIEW OF PLAINTIFF'S CLAIMS

Plaintiff's claims ignore the fact that the Smooth & Dreamy label clearly identifies the product as a "light ice cream" and compares that product with

---

However, it is clear that the calorie counts for "Regular Ice Cream" are not restated from the Smooth & Dreamy labels.  The calories for the regular ice cream market basket averages appear on the Smooth & Dreamy labels, and Smooth & Dreamy calories are in fact 1/3 fewer than the "regular" calories shown on the labels.  See Declaration of Sheila Wenke, dated June 2, 2010 ("Wenke Decl."), Exs. A-H.

the general category of "regular ice cream," a comparison which is required by federal regulations.  Fairness requires that the Court consider the entire Smooth & Dreamy label in context and not just the excerpt selectively referenced by Plaintiff in the Complaint.[3]  Moreover, to fully appreciate the paucity of factual and legal support for Plaintiff's claims, the Court should take judicial notice of the FDA's strict food labeling regulations and the guidance issued by the FDA concerning the requirements for "light ice cream."[4]

The Smooth & Dreamy label is carefully written to comply with the law and regulations that govern its product category, which is "light ice cream." Under §401 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §341), the FDA has the authority to define a "standard of identity" for certain foods to promote honesty and fair dealing in the interest of consumers.  Foods that are so defined are referred to as "standardized foods."  If a food's label bears the name of

---

[3]     On a motion to dismiss pursuant to F.R.C.P. 12(b)(6), a court may consider "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).  Where a complaint refers to a portion of a document, a court may consider the entire document without converting the motion to dismiss into one for summary judgment. Renz v. Shreiber, 832 F. Supp. 766, 771 (D.N.J. 1993); see also McKinniss v. General Mills, Inc., No. CV 07-2521 (GAF), 2007 WL 4762172, at *3 (C.D. Cal. Sep. 18, 2007) (taking judicial notice of the actual packaging filed by Defendant, which displays the images on the packaging better than the printouts attached to the complaint).

[4]     A court may consider records of administrative regulations and decisions issued pursuant to federal or state law.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

a standardized food, the food and its label must conform to the standard, which is published in the Code of Federal Regulations.

"Ice cream" is one such standardized food.  A product called "ice cream" must contain 10% or more milkfat and must meet other compositional and labeling requirements. 21 CFR 135.110.  "Light ice cream" is a separate and distinct standardized food.  21 CFR 130.10.  "Light ice cream" must meet the definition of the term "light" in 21 CFR 101.56, as well as the definition of "ice cream" in 21 CFR 135.110, except for specific modifications to "ice cream" that are permitted by 21 CFR 130.10.  The general standard in 21 CFR 130.10 permits modified versions of standardized foods so long as the modifications are consistent with an FDA-defined term such as "light" or "reduced fat."  When the FDA promulgated this general standard in 1993, it used ice cream as an example of a food that could be modified under this standard; it said that this general standard establishes conditions whereby terms such as light "can be used with the standardized term 'ice cream' for foods that resemble and substitute for ice cream but contain less milkfat than regular ice cream."  58 Fed. Reg. 520 (January 6, 1993) (section I(C)) (emphasis added).  As this quotation from the FDA

demonstrates, the phrase "regular ice cream" is a common way of referring to the standardized food "ice cream."[5]

All of the Smooth & Dreamy products are "light ice cream" – that is, they meet the FDA's standard of identity for "light ice cream." They are not regular, standardized "ice cream." As such, these products must comply with the regulatory definition of "light." Specifically, they must contain at least 50% less fat or 1/3 fewer calories as compared to an appropriate "reference food." 21 CFR 101.56(b)(2). The "reference food" is required to be "representative of the type of food that includes the product that bears the claim." 21 CFR 101.13(j)(1)(ii)(A). For Smooth & Dreamy, the reference food is therefore regular, standardized "ice cream." The nutrient value for the reference food must be "representative of a broad base of foods of that type, e.g., a value in a representative, valid data base; an average value determined from the top three national (or regional) brands, a market basket norm; or, where its nutrient value is representative of the food type, a market leader." Id. Thus, the reference food for Smooth & Dreamy light ice cream is regular ice cream with nutrient values that are representative of that generic class of food.

---

[5]   Similarly, in 1991 the FDA referred to the goal of standards of identity for reduced fat ice cream products as being to provide "lower fat alternatives to regular ice cream." 56 Fed. Reg. 2149 (January 22, 1991) (section V(B)).

Smooth & Dreamy's label makes no secret that it is a light ice cream. The statements on the Smooth & Dreamy label serve to clearly define the product as light ice cream and distinguish it from regular ice cream.   FDA regulations require the word "light" to be accompanied by "[t]he identity of the reference food and the percent (or fraction) that the calories and the fat were reduced."  21 CFR 101.56(b)(3).  Thus, the statement at issue in this case ("1/3 fewer calories than regular ice cream") is a statement that is mandated and regulated by the FDA.  The Smooth & Dreamy label must identify the reference food, which in this case is regular (standardized) ice cream, and must state the fraction of calories in the product as compared to the reference food.

Because the label compares the calories in "light ice cream" to those in "regular ice cream," the meaning of the phrase "regular ice cream" is apparent on its face.  It refers to the standardized food "ice cream" as distinguished from the standardized food "light ice cream."  The Smooth & Dreamy label at issue in this action <u>does</u> <u>not</u> state that the light ice cream has 1/3 fewer calories than a corresponding flavor of Breyers Original ice cream.  If the label had used the word "Breyers'" or "our" before "regular ice cream," then such an interpretation would be appropriate, but it did not.[6]

---

[6]      Indeed, in its regulations, the FDA uses the term "our" where the reference food consists solely of the manufacturer's own brand. <u>See</u>, <u>e.g.</u>, 21 CFR

Furthermore, the Smooth & Dreamy label complies with FDA regulatory requirements by including on the label a statement of the level of fat and calories per serving in Smooth & Dreamy **and** in regular ice cream. Rather than stating the entire contents of the Smooth & Dreamy label in his Complaint, Plaintiff pasted an incomplete photocopy of the Smooth & Dreamy label into the body of the Complaint (¶ 17). Plaintiff's incomplete photo deletes the key words "LIGHT ICE CREAM" and omits entirely the calorie count for "regular ice cream," which, as promulgated by FDA regulations, appears on the Smooth & Dreamy Vanilla/Chocolate/Strawberry label in the following manner:

> **Breyers Light Vanilla/Chocolate/**
> **Strawberry Ice Cream**
> **110 Calories, 3g Fat Per Serving.**
> **Regular Vanilla/Chocolate/Strawberry Ice Cream**
> **180 Calories, 10g Fat Per Serving.**[7]

Thus, if Plaintiff had a question about the level of calories in the regular ice cream referenced on the Smooth & Dreamy label, the answer is right there on the label.

---

101.56(b)(3)(i) ("our regular cheese cake"); 21 CFR 101.56(c)(1)(ii)(A) ("our regular soy sauce").

[7] Wenke Decl., Ex. H. Complete copies of the labels for the eight Smooth & Dreamy flavors referenced in the Complaint are attached to the accompanying Wenke Decl. Nowhere in the Complaint does the Plaintiff even mention that the label reports the calorie count for "Regular Ice Cream." Rather, Plaintiff incorrectly states that the calories for the "Vanilla/Chocolate/Strawberry" flavor of "Regular Ice Cream" is only 130 calories (for Original Breyers), not 180 calories (the market basket average) as is reported on the label itself. (Compl. ¶ 19.)

The statements at issue on the Smooth & Dreamy label are not written at the whim of the manufacturer. Rather, they are controlled by FDA regulations. As previously noted, FDA regulations require the nutrient value for the reference food for a light ice cream to be "representative of a broad base of foods of that type" and permit this to be based on a market basket norm. Indeed, the manufacturer's regular brand may *not* be used as the reference food (unless it is a market leader whose nutrient value is representative of the food type). 21 CFR 101.13(j)(1)(ii)(B).

Importantly, the FDA does not require that the label identify the reference food in detail or explain how the nutrient values of the reference food were derived, but instead the FDA merely requires that a manufacturer provide the specific information on how the nutrient values were derived to consumers upon request.[8] See 21 CFR 101.13(j)(1)(ii)(A). As is clear from a complete copy of the Smooth & Dreamy label (and not from the incomplete photocopy pasted into the Complaint), the label contains all of the information required to bring it into full compliance with FDA regulations concerning its comparative calorie claims. (Wenke Decl., Exs. A-H.) The calorie count for "Regular Ice Cream" is

---

[8]    The Smooth & Dreamy label provides an "800" telephone number, address and website. (Wenke Decl., Exs. A-H.) Plaintiff does not allege that he made any effort to contact Unilever regarding the definition of "regular ice cream" in the twelve days between the time he purchased the Smooth & Dreamy and filed his Complaint.

immediately adjacent to the nutrition label as required by 21 CFR §101.13(j)(2)(iv)(A)-(B) and 21 CFR §101.56(b)(3).[9]

      Notably, the FDA, in its publicly-available document entitled "Guidance for Industry: A Food Labeling Guide," explicitly suggests the word "regular" to describe **a market basket** of products which are comparatively referenced on a food label. See Office of Nutrition, Labeling, and Dietary Supplements, Food and Drug Admin., Guidance for Industry: A Food Labeling Guide, VIII. (Claims), 2008.[10] Specifically, the FDA recommends the use of the word "<u>regular</u>" to describe a market basket of products when comparing a "light" product:

> **N35. How would a label state the identity of a reference food when the nutrient value used as a reference for the claim was from a data base or was an average of several foods?**

---

[9]     In promulgating the regulations governing food labeling, the FDA stated: the claims may be misleading unless they are accompanied by certain material facts that are necessary if consumers are to understand the change that has been made in the food. The agency considers that in the presence of a relative claim: (1) the percent of change in the nutrient level, and (2) the amounts of the nutrient in the labeled food and the reference food are material facts under sections 403(a) and 201(n) of the act." 56 Fed. Reg. 60421 (Nov. 27, 1991).

[10]     Print copies of the document are available through the FDA, and an electronic copy is available at:
http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/Guidance Documents/FoodLabelingNutrition/FoodLabelingGuide/ucm064908.htm.
For the Court's convenience, a copy of Section VIII from this publicly available document is attached to the Declaration of Ronald J. Levine, Ex. A.

> **Answer:** The label might state "50% less fat than <u>regular</u> Italian salad dressing" (on a light Italian dressing) or "half the fat of the average creamy Italian salad dressing" (on a light creamy Italian salad dressing). The label is not required to state that the reference value came from a data base. 21 CFR 101.13(j)(2)(i).

<u>Id.</u> (emphasis added). Therefore, to the extent that a food label makes a comparative claim regarding a "light" product vis-à-vis a "regular" reference food, the FDA expressly states that the term "regular" can mean a market basket of the leading brands of the reference food. Accordingly, Plaintiff's assertion that "regular ice cream" means Breyers Original brand conflicts with explicit FDA guidance.

FDA regulations have the force and effect of law. <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 302 n.31 (1979); <u>Hi-Tech Pharms., Inc. v. Crawford</u>, 544 F.3d 1187, 1190 (11th Cir. 2008). The label for the Smooth & Dreamy brand completely complies with the published FDA's regulations, and in fact employs the very word – "regular" – recommended by the FDA to define a market basket of similar products.

## LEGAL STANDARD

Under F.R.C.P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir.

2007).   No presumptive truthfulness attaches to a plaintiff's allegations on a 12(b)(1) motion.  <u>Mortensen & First Federal Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).

In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff pleads facts sufficient to permit the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Conversely, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (internal quotations and citations omitted).

And, where the claims are asserted on behalf of a putative class, the complaint may be dismissed where the prospective named plaintiff cannot state a claim for relief.  <u>See</u> <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163, 1170 (3d Cir. 1987).

## ARGUMENT

### POINT I

### PLAINTIFF HAS FAILED TO PLEAD AN INJURY SUFFICIENT TO CONFER ARTICLE III STANDING

Plaintiff asserts that he was injured when he purchased two tubs of Smooth & Dreamy. (Compl. ¶ 30.) The mere allegation that Plaintiff paid for a product is insufficient to establish injury-in-fact as required under Article III, § 2 of the United States Constitution. See Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 290-91 (3d Cir. 2005). "Allegations of subjective [harm] are not an adequate substitute for a claim of specific present objective harm or a threat of specific harm." Laird v. Tatum, 408 U.S. 1, 14 (1972). Mere "purchase price" damages, without more, are insufficient to establish injury-in-fact.

In In re Schering-Plough Corp., Civ. No. 06-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009), this Court held that putative class plaintiffs' demand for the refund of the purchase price of certain cancer drugs based on allegations of illegal off-label marketing did not plead a cognizable theory of injury where plaintiffs "received the benefit of their bargain[.]" Id. at *10; see also Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003). And, in Koronthaly v. L'Oreal USA, Inc., No. 08-4625, 2010 WL 1169958 (3d Cir. Mar. 26, 2010), the Third Circuit recently affirmed the District Court's dismissal of a putative class action alleging claims for, inter alia, violation of the NJCFA, breach

14

of warranty and unjust enrichment in which the class plaintiff, sought the refund of the purchase price of lipstick.[11]  The District Court dismissed the complaint in its entirety.   On appeal, the Third Circuit affirmed, stating that "[a]bsent any allegation that [plaintiff] received a product that failed to work for its intended purpose or was worth objectively less than one could reasonably expect, [plaintiff] has not demonstrated a concrete injury-in-fact." Id. at *2.

Further, in Levy v. Keystone Food Prods., Nos. 07-5502, 08-1277, 08-1554, 2008 WL 4115856 (E.D. Pa. Aug. 28, 2008), a markedly similar case to the instant action, plaintiffs brought three putative class actions in which they asserted identical claims for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, breach of express warranty and unjust enrichment based on allegations that defendant "deceptively misbranded their snack food products by representing them as healthy 'low-fat' snacks, containing only 2.5 grams of fat and 120 calories per serving, when in fact the products contained significantly higher levels of fat and calories." Id. at *1.  Plaintiffs alleged that they were injured because they would not have purchased the food products but for defendant's alleged mislabeling.  Id. at *7.  While the court dismissed each of

_____

[11]     Defendant is well aware of the Third Circuit's admonitions regarding the citation to its unpublished, non-precedential opinions. See, e.g., Jamison v. Klem, 544 F.3d 266, 278 n.11 (3d Cir. 2008).  However, since the Third Circuit's recent Koronthaly decision is directly on point regarding Plaintiff's failure to plead injury-in-fact, Defendant cites this opinion as persuasive authority.

15

plaintiffs' claims on alternative grounds, the court noted that "[t]he fact that plaintiffs might have foregone purchasing [defendant's snack products] had they known the true fat and caloric content does not fit the Supreme Court's baseline injury-in-fact requirements articulated in Lujan v. Defenders of Wildlife[.]"  Id. (citing Lujan, 504 U.S. 555 (1992)).

Plaintiff's flawed notion of purchase price injury relies solely upon the idea that a consumer is *ipso facto* injured by purchasing an allegedly mislabeled product, regardless of whether the product is worth its price or it performs as advertised.  Deceptive acts alone do not cause injury.  See In re Schering Plough, 2009 WL 2043604, at *10; Levy, 2008 WL 4115856, at *7. Instead, a plaintiff must allege a distinct and palpable injury, not one that is merely conjectural and hypothetical.  Lujan, 504 U.S. at 560-61.  Here, Plaintiff is foreclosed from pleading traditional forms of injury-in-fact (*e.g.*, that the product injured him or that the product was worth less on account of the alleged misrepresentation).  He does not plead an injury caused by his consumption of the ice cream; he only alleges a misrepresentation concerning a comparative calorie claim and does not plead that Unilever misstated the number of calories contained in the Smooth & Dreamy product itself.[12]  Consumers choose a light ice cream like

---

[12]  This is not a case where a consumer purchased product "X" based on misrepresentations on a label and, instead, received product "Y".  Plaintiff expected to purchase, and did receive, two different Smooth & Dreamy flavors

Smooth & Dreamy so they will obtain less calories and fat than are present in regular products – and that is exactly what Plaintiff obtained when he purchased Smooth & Dreamy Light Ice Cream. Thus, he does not establish how the alleged deception injured him in any tangible way.

## POINT II

## PLAINTIFF'S CLAIMS ARE PREEMPTED

Even if the Court determines that Plaintiff has established standing to assert his claims, Plaintiff's claims are nonetheless barred and should be dismissed because federal law preempts state law claims of this nature.

**A.    Plaintiff's Claims Are Expressly Preempted**

Congress amended the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. §§ 343 *et seq.* The NLEA contains an express preemption provision which explicitly preempts state laws that regulate the nutritional labeling requirements added by the NLEA. See 21 U.S.C. § 343-1(a); see also Pub. L. No. 101-535, §6 (c)(1) (referencing "express preemption" effect of § 343-1); N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 556 F.3d 114, 120 (2d Cir. 2009).

---

with 130 calories per serving.  (Compl. ¶¶ 19, 21.)  Plaintiff's only protest is with the fact that he thought those calorie counts were 1/3 less than Breyers All Natural Original brand.  But if Plaintiff read the complete product label, he would have known that 130 calories was 1/3 less than a generic category of regular ice cream, not Breyers Orginal.

Of particular relevance in this case are 21 U.S.C. §343-1(a)(1) and (a)(5), which preempt any state requirement that is not identical to established standards of identity or to requirements set forth in 21 U.S.C. § 343(r) ("Nutrition levels and health-related claims") concerning the characterization of the level of nutrients in a food. See 21 U.S.C. § 343-1; see also Shepard v. DineEquity, civ. 08-2416 (KHV), 2009 U.S. Dist. LEXIS 97245 (D. Kan. Sept. 25, 2009).

21 U.S.C. § 343-1(a)(1) expressly preempts any state requirement "that is not *identical*" to the standard of identity for light ice cream (emphasis added) and 21 U.S.C. § 343-1(a)(5) expressly preempts any requirement respecting nutrition levels. As discussed above, the regulation's standard of identity requires the Smooth & Dreamy label to identify the reference food and state the difference in fat and calories as compared to the reference food. The standard of identity further requires the reference food to be a regular ice cream the nutrient values for which are representative of the category, and reported on the label itself. If state laws are interpreted as to impose different labeling requirements than federal law, such requirements are preempted.

As demonstrated herein, the Smooth & Dreamy label complies as a matter of law with the applicable FDA regulations which have been promulgated pursuant to powers granted to the FDA by the NLEA. Therefore, Unilever should not be threatened with civil liability under state law where it has complied with

18

federal regulations governing the specific conduct underlying Plaintiff's claims. See 21 U.S.C. § 343-1(a)(5); In re PepsiCo, 588 F. Supp. 2d 527 (S.D.N.Y. 2008); Reyes v. McDonald's Corp., Nos. 06 C 1604, 06 C 2813, 2006 WL 3253579 (N.D. Ill. Nov. 8, 2006).

## B.    Plaintiff's Claims Are Impliedly Preempted

Plaintiff's claims are impliedly preempted as well.  Implied conflict preemption arises when the application of state law creates an actual conflict with federal law.  Panitch v. Continental Airlines, 06-3611 (JAG), 2008 WL 906240 (D.N.J. Mar. 31, 2008).

The FDCA sets forth a complex framework of laws and regulatory authority concerning the labeling of food.  It is well settled that state tort law may not be used by private plaintiffs to pursue alleged violations of the FDCA.  See 21 U.S.C. § 337(a); Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 348 (2001).  To overlay the FDCA with the state law tort system in which the FDA labeling guidelines are subject to attack would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties.  Fraker v. KFC Corp., No. 06-CV-01284-JM (WMC), 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007).[13]

---

[13]    The Third Circuit's decision in Holk v. Snapple Beverage Corp., 575 F.3d 329 (3d Cir. 2009) is no bar to dismissal in this case. In Holk, the court considered an action against a defendant which allegedly marketed a "natural" product that was sweetened with high fructose corn syrup. As the decision points out, the FDA

## POINT III

## PLAINTIFF'S COMPLAINT IS INSUFFICIENTLY PLED
## AND MUST BE DISMISSED

Even if Plaintiff had standing and his claims were not preempted, this Complaint is a textbook "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  Except for the first few sentences describing the Breyers line of ice cream products, Plaintiff's sixteen statements of "Factual Allegations" consist of nothing but conclusory allegations reciting the elements of his NJCFA and warranty claims.  See, e.g., Rait v. Sears, Roebuck, Civ. No. 08-2461 (JLL), 2009 WL 2488155  (D.N.J. Aug. 11, 2009); In re Toshiba Am. HD DVD Mktg. & Sales Practices, Civ. No. 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009); Wright v. Gen. Mills, Inc., Civil No. 08cv1532 (NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009);  see also Oshinsky v. N.Y. Football Giants, Inc., Civil Action No. 09-cv-1186 (PGS), 2009 WL 4120237 (D.N.J. Nov. 17, 2009).

By way of example, in Wright, the plaintiff claimed a violation of California's consumer fraud statute, alleging that Nature Valley products were sold as "'100% Natural' even though the 'products contain[ed] one or more non-natural

---

did not issue regulations that pertained to the product label claim, i.e., determining whether products that contain high fructose corn syrup can be labeled as natural. In contrast, in this case the FDA does regulate the specific label claims. Moreover, in Holk, the defendant had waived any claim of express preemption. Id. at 336.

or artificial ingredient[s], such as high fructose corn syrup.'" 2009 WL 3247148, at *1. Specifically, the plaintiff alleged:

> [a]s a direct result of its misleading, deceptive, untrue advertising and its unlawful, unfair and fraudulent business practices related to the "100% Natural" products listed above, Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products.

Id. at *5. Holding that "[t]his sparse allegation of injury-in-fact does not meet the Twombley [sic] and Iqbal pleading standard," the court dismissed the plaintiff's consumer fraud claim for failing to meet the pleading requisite pleading standards. Id. at *5-6.

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM
## UNDER THE NEW JERSEY CONSUMER FRAUD ACT

### A.    Plaintiff, a Massachusetts Resident Who Purchased Smooth & Dreamy in Massachusetts and Allegedly Suffered Injury In Massachusetts, Cannot Bring an Action Under the NJCFA

Because the New Jersey Consumer Fraud Act does not have the extraterritorial reach that Plaintiff assumes, Plaintiff, a Massachusetts resident, cannot assert a claim under the NJCFA based on his purchase of Smooth & Dreamy in Massachusetts.

To determine which state's consumer fraud law applies to Plaintiff's allegations, the Court should look to New Jersey's choice-of-law rules. See Thabault v. Chait, 541 F.3d 512, 535 (3d Cir. 2008). New Jersey choice-of-law

determinations involve a two-step inquiry.  In the first step, a court must examine the substance of the potentially applicable laws to determine if an actual conflict exists.  See Lebergern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006).  If no actual conflict exists between the substance of the potentially applicable laws, the inquiry ends and the court must apply the law of the forum state.  In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997).  However, if an actual conflict exists, the court must apply the "most significant relationship" test as discussed in the New Jersey Supreme Court's opinion in P.V. v. Camp Jaycee, 197 N.J. 132 (2008).

Here, there are several substantive differences which create an actual conflict between the NJCFA and the Massachusetts Consumer Protection Act ("MCPA").   Compare N.J.S.A. §§ 56:8-1 et seq. (no notice requirement; consumers entitled to jury trial on NJCFA claims), with M.G.L.A. c. 93A, §§ 1 et seq. (30 day pre-filing notice requirement; no right to jury trial); see Fink v. Ricoh Corp., 365 N.J. Super. 520, 573-77 (Law Div. 2003) (noting differences in New Jersey and Massachusetts consumer fraud laws with respect to, inter alia, requirement of knowledge of proof of falsity and right to jury trial).  Because there is an actual conflict between the potentially applicable laws, the court should apply New Jersey's "most significant relationship" test to determine which state's law applies.

Applying the "most significant relationship" test, which incorporates the factors enumerated in the Restatement (Second) of Conflict of Laws § 148 (1971), it is clear that Plaintiff's claim bears a more significant relationship with Massachusetts than with New Jersey. Massachusetts is the state where the product was sold and purchased, where the Plaintiff was allegedly induced to do so, and the state where Plaintiff suffered his alleged injury, whereas New Jersey bears no relationship to Plaintiff's claim other than the fact that Unilever's corporate headquarters is located here.

In <u>Agostino v. Quest Diagnostics Inc.</u>, 256 F.R.D. 437, 463 (D.N.J. 2009), this Court refused class plaintiffs' request to apply the NJCFA to out-of-state plaintiffs whose claims had little or no relationship to New Jersey except for the location of defendant's headquarters. After undertaking an exhaustive choice-of-law analysis, the Court correctly concluded that "the consumer fraud law of each class plaintiff's home state should apply to his respective claim." <u>Id.</u> This Court's recognition that the NJCFA does not have extraterritorial effect where a class plaintiff's claims are based on a transaction occurring entirely within the plaintiff's home state is supported by many recent cases, including the Third Circuit's decision in <u>Cooper v. Samsung Elec. Am., Inc.</u>, No. 08-4736, 2010 WL 1220946 (3d Cir. Mar. 30, 2010), where the Court affirmed the dismissal of the NJCFA claim asserted by an Arizona resident who purchased a television in

23

Arizona because the commercial transaction at issue bore no relationship to New Jersey other than the location of the defendant's headquarters. Id. at *3-4.[14].

Accordingly, Plaintiff's NJCFA claim must be dismissed because the NJCFA does not apply to the facts alleged in the Complaint.

## B.   Plaintiff's Recital of the Elements of a NJCFA Claim Does Not State a Claim Under Fed. R. Civ. P. 9(b)

To state a claim under the NJCFA, a plaintiff must allege three elements: "(1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (2007) (alterations in original).  Plaintiff's NJCFA claim is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b).  See Harper v. LG Elec. USA, Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009); Naporano Iron & Metal Co. v. Am. Crane Co., 79 F. Supp. 2d 494, 512 (D.N.J. 1999).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

---

[14]    See also Payne v. Fujifilm U.S.A., Inc., Civ. No. 07-385 (GEB), 2010 U.S. Dist. LEXIS 52808, at *25 (D.N.J. May 28, 2010) ("consumer fraud law of each prospective class member's home state should apply to that member's consumer fraud claims" where the "allegedly fraudulent marketing and advertising occurred in each prospective plaintiff's home state, and each prospective plaintiff acted in reliance on [the] alleged fraud in the state in which they purchased" the product); In re Digitek Prod. Liab. Litig., 2:08-md-1968, 2010 WL 2102330, at *9-10 (S.D. W.Va. May 25, 2010) (applying New Jersey choice-of-law rules and concluding that the NJCFA does not apply to out-of-state consumers who purchased a product in their home state and allegedly suffered injury there).

A court should dismiss a NJCFA claim pursuant to Rule 9(b) where "[p]laintiff merely recasts the language of the NJCFA into her pleading without providing any factual support." D'Alessandro v. Hartford Life & Acc. Ins. Co., Civ. No. 09-1115 (JAP), 2009 WL 1228452, at *3 (D.N.J. May 1, 2009). The heightened particularity required by Rule 9(b) applies to each element of Plaintiff's NJCFA claim. See Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 296-305 (D.N.J. 2009).

### 1.    The Complaint Fails to Adequately Allege Unlawful Conduct

The NJCFA sets forth three general categories of unlawful conduct: (1) affirmative acts; (2) knowing omissions or purposeful concealment of a material fact; and (3) violations of regulations promulgated pursuant to the NJCFA. Stoecker v. Echevarria, 408 N.J. Super. 597, 623-24 (App. Div. 2009). Plaintiff repeatedly characterizes the "1/3 fewer calories than regular ice cream" statement on the Smooth & Dreamy label as a "misrepresentation" (Compl. ¶¶ 22-25, 27-28) and an "unconscionable commercial practice" (Compl. ¶¶ 25, 27-28). And Plaintiff summarily alleges that Unilever's "promotion, marketing and sale of its Smooth & Dreamy Ice Cream constitutes an unconscionable commercial practice, deception, fraud, false promise and misrepresentation, as well as an omission of fact." (Compl. ¶ 38.)

Affirmative acts in violation of the NJCFA include "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation[.]" N.J.S.A. 56:8-2. "To constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer. . . ." Turf Lawnmower Repair Inc. v. Bergen Record Corp., 139 N.J. 393, 416 (1995). The conduct "must deal primarily with consumer fraud viewed as a whole in light of all surrounding circumstances." Id. Whether packaging could mislead a reasonable consumer can be determined objectively, and the court can dismiss a complaint where no reasonable consumer would have been misled. See In re Toshiba Am., 2009 WL 2940081, at *18; Haskell v. Time, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

Plaintiff makes the conclusory claim that the "1/3 fewer calories than regular ice cream" statement constitutes a misrepresentation of the relative caloric value of Smooth & Dreamy. But given the information explicitly stated on the Smooth & Dreamy label and the regulations governing the labeling of "light" foods (as well as FDA guidance that specifically recommends using "regular" to refer to a market basket of products), Plaintiff's notion that the term "regular ice cream" refers to Breyers Original is unreasonable and inadequate to plead a sufficient affirmative act under the NJCFA. See Hassler v. Sovereign Bank, No.

09-2982, 2010 WL 893134, at *3 ($3^d$ Cir. Mar. 8, 2010) (focus on one sentence without reference to the rest of the writing at issue fails as a matter of law to plead a NJCFA claim). "[W]here a CFA claim is based upon an allegedly incomplete or misleading disclosure, and where the [disclosure] 'contain[s] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed,' dismissal for failure to state a claim is appropriate." Hassler, 644 F. Supp. 2d 509, 515 (D.N.J. 2009), aff'd, 2010 WL 893134; see also Freeman v. Time, Inc., 68 F.3d 285, 290 (9th Cir. 1995) (dismissing consumer fraud false advertising claims because "[a]ny ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole."). Had Plaintiff acted reasonably and read the complete Smooth & Dreamy label (as he presumably did of the Breyers Original label in order to determine (mistakenly) that the statement of relative caloric value was incorrect), he would have known that Unilever had not misrepresented any calorie information or otherwise engaged in an unconscionable commercial practice.

Additionally, it is well settled law that "a plaintiff seeking to recover based on a defendant's omission[] 'must show that the defendant acted with knowledge, and intent is an essential element of the fraud.'" Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556 (2009) (emphasis added). In other words, "a plaintiff must provide proof establishing that the defendant acted knowingly, with intent that another rely on such concealment, suppression, or omission." Sanders

v. Rosenberg, Civ. No. 06-1406 (NLH), 2008 WL 1732980, at *9 (D.N.J Apr. 10, 2008).

The Complaint does not contain a single allegation that could even be generously construed as asserting that Unilever knowingly omitted a material fact, or acted with intent.  In reality, the label complies with FDA labeling regulations.  Therefore, Plaintiff's claims are without merit. See Cytyc Corp. v. Neuromedical Systems, Inc., 12 F. Supp. 2d 296, 301 (S.D.N.Y 1998) ("representations by plaintiff that comport substantively with statements approved as accurate by the FDA cannot supply the basis for [defendant's] claims " . . . "the challenged statements . . . are similar enough to the approved statements for the Court to conclude, as a matter of law, that they are neither false nor misleading.").[15]

In sum, Plaintiff's NJCFA claim should be dismissed because the Complaint does not contain even the barest allegation that Unilever acted "outside the norm of reasonable business practice in that it will victimize the average consumer." Turf Lawnmower, 139 N.J. at 416. See also Morris County Cardiology Consultants, PA. v. Northwestern Mutual Life Insurance Company, Civ. No. 08-00308 (SRC), 2009 WL 3068260 (D.N.J. Sept. 21, 2009) (holding that allegation

---

[15]    Alternatively, Plaintiff's NJCFA claim based on a knowing omission should also be dismissed because Plaintiff cannot assert that the "1/3 Fewer Calories Than Regular Ice Cream" statement is both an affirmative misrepresentation and an omission of a material fact. See Fink, 365 N.J. Super. at 550 ("The same language in Ricoh's promotional material cannot be construed both to be an affirmative representation . . . and as concealment of a material fact . . ..").

that plaintiff did not receive benefits to which he believed he was entitled did not rise to the level of an "unconscionable commercial practice under the CFA").

### 2.   Plaintiff Fails to Plead an Ascertainable Loss

Even if Plaintiff had properly alleged an unlawful act, Plaintiff's NJCFA claim still fails because he has not and cannot plead facts demonstrating that he suffered an "ascertainable loss." <u>Thiedemann v. Mercedes-Benz</u>, 183 N.J. 234, 245 (2005). Plaintiff's loss cannot be hypothetical or illusory. <u>See Morgan v. Markerdowne Corp.</u>, 201 F.R.D. 341, 350 (D.N.J. 2001); <u>Dabush v. Mercedes-Benz, USA</u>, 378 N.J. Super. 105, 121 (App. Div. 2005). The loss must be particularized, <u>Franulovic v. Coca Cola Co.</u>, Civ. Nos. 07-539, 07-828 (RMB), 2007 WL 3166953 (D.N.J. Oct. 25, 2007), and must "rest upon an objectively reasonable basis." <u>Dabush</u>, 378 N.J. Super. at 121-22.

Here, the Complaint contains a single, conclusory allegation in support of Plaintiff's claim that he has suffered an ascertainable loss as a result of Unilever's conduct. Plaintiff nominally alleges that he "has suffered an ascertainable loss" equal to the purchase price of the two tubs of Smooth & Dreamy. (Compl. ¶ 30.) But, Plaintiff's faulty notion of ascertainable loss belies the facts and the applicable law.

As a primary matter, Plaintiff received two tubs of edible Smooth & Dreamy for his purchase, both of which contained the precise number of calories

as represented on the label.  Moreover, as a complete reading of the label makes clear, the "1/3 fewer calories than regular ice cream" statement contained on the Smooth & Dreamy label does not refer to a comparison with Breyers Original. Plaintiff's unreasonable belief that the term "regular ice cream" referred only to Breyers Original does not establish that he suffered an ascertainable loss.[16]  See Dabush, 378 N.J. Super. at 122 (holding that plaintiff could not establish her NJCFA claim where "[her] asserted loss was based on an unreasonable expectation of what was [advertised] in the brochure[.]").

In addition, Plaintiff's NJCFA claim fails as a matter of law because, under New Jersey law, an ascertainable loss cannot be the purchase price of a product where a consumer received something of value for his or her purchase. The New Jersey Supreme Court and courts within this District have construed the ascertainable loss element of a NJCFA claim and determined that, where a consumer receives something of value for her purchase, the purchase price of the product cannot represent the consumer's ascertainable loss.  See Furst v. Einstein

---

[16]   Plaintiff fails to allege either why he believed that the term "regular ice cream" referred to Breyers Original or why a reasonable consumer would share that belief, especially in view of the fact that the calorie count for "Regular Ice Cream" also appears on the label.  See Arcand, 673 F. Supp. 2d at 300-301 ("The flaw in [p]laintiffs' theory of [ascertainable] loss is that [p]laintiffs do not allege why they believed that the [toner cartridge's] life was tied to the amount of ink in the cartridge, leaving this [c]ourt to speculate as to whether this expectation was objectively reasonable, and more importantly, whether what [p]laintiffs received was ostensibly less than what [defendant] promised.").

Moomjy, Inc., 182 N.J. 1, 13 (2004); Parker v. Howmedica Osteonics Corp., Civ.
No. 07-2400 (JLL), 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008); see also
Romano v. Galaxy Toyota, 399 N.J. Super. 470, 484 (App. Div. 2008).

      Plaintiff's flawed notion of ascertainable loss is strikingly similar to
that reviewed and rejected by this Court in Solo v. Bed Bath & Beyond, Inc.,
where the Court dismissed Plaintiff's NJCFA claim. Civ. No. 06-1908 (SRC),
2007 WL 1237825 (D.N.J. Apr. 26, 2007).   There plaintiff alleged that he
purchased a sheet set advertised as having "a '1000 Thread Count,'" but that
actually had a thread count "of only 492." Id. at *1.  The plaintiff broadly stated
that "Plaintiff and the proposed Class and Subclass Members have suffered an
ascertainable loss in that they purchased linens that were of a lower quality and
less valuable than the linens they were promised." 2007 WL 1237825, at *3.  This
Court said, "[t]hese broad and conclusory allegations are not sufficient to
demonstrate an ascertainable loss." Id.

      As in Solo, Plaintiff here does not and cannot plead ascertainable out-
of-pocket loss that is quantifiable or measureable.  Plaintiff pleads that he "did not
receive the advertised product – the product which Defendant mislead them into
believing they were purchasing, i.e., an ice cream with one-third fewer calories . .
." (Compl. ¶ 40.)  He alleges that he purchased light ice cream labeled as having
"one-third fewer calories" but that actually has "on average" "only 14.2% fewer

calories." (Compl. ¶ 20.) But the stark reality is that Plaintiff's allegation of purchasing two tubs of ice cream with "on average" 14.2% fewer calories rather than 33.3% fewer calories -- a net average loss of 19.1% calories -- sets forth no quantifiable loss in value. See Morris County Cardiology Consultants, 2009 WL 3068260, at *2; Germain v. J.C. Penney Co., No. CV 09-2847 (CAS), 2009 WL 1971336 (C.D. Cal. July 6, 2009).

## C.    Plaintiff's NJCFA Claim Also Fails Due to the FDA's Comprehensive Regulation of Food Labeling

In deference to areas of law already occupied by governmental agency oversight, New Jersey's courts have consistently held that the NJCFA does not apply to activities which are already subject to direct, comprehensive government regulation. The New Jersey Supreme Court has recognized the NJCFA's inapplicability where, as here, a "real possibility" of conflict exists regarding regulatory jurisdiction over the alleged practice. Real v. Radir Wheels, 198 N.J. 511, 522 (2009).

The NJCFA is inapplicable where "the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 270 (1997); see also Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496, 502 (D.N.J. 2006) (granting dismissal, finding that the

32

product claim followed FDA guidelines "[t]herefore, [plaintiff's] [] characterization of the [product] [] is accurate and does not have the capacity to mislead.  Thus, Plaintiff cannot rely on this statement to state a claim under the New Jersey CFA."); New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 14 (App. Div. 2003) ("the wording of the ads, to the extent that it is subject to FDA oversight … [is] not actionable").

Thus, even if the Complaint set forth a viable theory, it would be entirely appropriate and proper to decline to apply consumer fraud statutes to these food label claims.

## POINT V

## PLAINTIFF FAILS TO STATE A CLAIM
## FOR BREACH OF EXPRESS WARRANTY

**A.    Plaintiff's NJUCC Claim Fails Because the New Jersey Statute Does Not Apply Here**

Plaintiff's Second Cause of Action seeks relief pursuant to N.J.S.A. 12A:2-101 et seq. for breach of express warranty, which necessitates a determination of whether Massachusetts or (as Plaintiff alleges) New Jersey warranty law applies.  Applying New Jersey's choice of law analysis to Plaintiff's express warranty claim, it is clear that an actual conflict exists between the applicable warranty laws of New Jersey and Massachusetts.  Compare Yost v. Gen. Motors Corp., 651 F. Supp. 656, 658 (D.N.J. 1986) (recognizing that New Jersey

requires a present, manifest defect and injury for express warranty claims), and Cipollone v. Liggett Group, Inc., 683 F. Supp. 1487, 1498 (D.N.J. 1988) (holding that consumer's failure to comply with applicable notice requirement did not bar express warranty claim), with Holtzman v. Gen. Motors Corp., No. 021368, 2002 WL 1923883 (Mass. Super. Ct. July 2, 2002) (holding that, under Massachusetts law, a buyer who receives goods unfit for ordinary use can maintain a warranty claim regardless of whether the alleged defect has manifested itself), and M.G.L.A. c. 106, § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy . . ..").  Therefore, this court should apply New Jersey's "most significant relationship" test to Plaintiff's breach of express warranty claim.  See Agostino, 256 F.R.D at 461 (applying New Jersey's "most significant relationship test" to both tort and contract claims).

Applying the corresponding choice of law factors contained in Section 188 of the Restatement (Second) Conflict of Laws, it is clear that Massachusetts law applies to Plaintiff's express warranty claim.  Restatement (Second) of Conflict of Laws § 188 (1971).  Firstly, Plaintiff alleges that Unilever expressly warranted Smooth & Dreamy to him in Massachusetts, the state where Plaintiff resides and where he allegedly purchased the product.  Secondly, Plaintiff rendered his performance under the alleged warranty in Massachusetts.  Third, the Smooth

& Dreamy tubs were purchased from a retailer located in Massachusetts and presumably are still located there (since Plaintiff does not allege that he consumed or discarded the "light" ice cream). Therefore, these factors strongly favor the application of the law of Massachusetts, and not New Jersey, to Plaintiff's express warranty claim. Accordingly, because Plaintiff pleads a claim for breach of express warranty under a state statute that does not apply to this action, his claim should be dismissed.

**B.   Plaintiff Fails to Sufficiently State a NJUCC Claim**

Even if Plaintiff was entitled to seek the relief claimed in his Second Cause of Action, Plaintiff's selective reading and/or misunderstanding of the contents of the label cannot give rise to an express warranty claim. <u>See</u> <u>McKinniss</u>, 2007 WL 4762172, at *5 (dismissing consumer fraud and breach of express warranty claims where "[d]efendant truthfully disclosed the ingredients in each of [its] products but [p]laintiffs chose not to read them."). Indeed, true statements, as a matter of law, cannot be the basis for a breach of express warranty claim. <u>See</u> <u>Simpson v. Widger</u>, 311 N.J. Super 379, 390-91 (App. Div. 1998) ("the representation . . . was true and cannot be the basis of a cause of action for breach of express warranty."). Nor can an isolated statement characterizing goods themselves give rise to such a claim. <u>Lithuanian Commerce Corp. v. Sara Lee</u>, 214 F. Supp. 2d 453, 459 (D.N.J. 2002) (claim that "the pantyhose would have a value

to LCC of $21.64 per dozen, or $920,349.20, to LCC, that being LCC'S <u>average</u> <u>wholesale cost</u> for the quantity of product delivered as represented by Sara Lee" could not create an express warranty). Moreover, assuming the statement at issue constitutes a warranty, it was not in any way breached since the product is a properly labeled "light" ice cream, and the Plaintiff purchased a "light ice cream" as defined by law.

Further, Plaintiff fails to sufficiently plead injury. Plaintiff alleges he would not have purchased the light ice cream but for Unilever's alleged misstatement. (Compl. ¶31.) The fact that Plaintiff might have foregone purchasing the product if more information had been provided does not represent an ascertainable injury and defeats Plaintiff's express warranty claim. <u>Levy</u>, 2008 WL 4115856, at *7. Moreover, New Jersey's express warranty statute does not afford the remedy sought by the Complaint. "[T]he buyer's measure of damage is the difference between the value of the defective goods and the value they would have had if they had been as warranted." <u>Spring Motors Distribs. v. Ford Motor Co.</u>, 98 N.J. 555, 566 (1985); <u>Buff v. Giglio</u>, 124 N.J. Super. 94, 99 (App. Div. 1973). Concededly, Plaintiff received the Smooth & Dreamy light ice cream he purchased and the product was perfectly edible even if, as alleged, the regular ice cream to which it was compared contained fewer calories than Plaintiff allegedly believed.

As this Court has held,  "warranty claims are not intended to address hypothetical economic loss; they are meant to compensate a buyer who has not gotten the benefit of her bargain because the product in question does not meet generally accepted standards or disappoints consumer expectations."  Heindel v. Pfizer, Inc., 381 F. Supp. 2d 364, 379 (D.N.J. 2004).   Exactly the same point applies here where the product itself is satisfactory even if Plaintiff himself was allegedly confused as to its labeling.   Accordingly, there is no basis for the refund remedy sought by the Complaint.[17]

## POINT VI

## PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

To state a claim for unjust enrichment a plaintiff must establish that the defendant has received a benefit from the plaintiff; and that the retention of the benefit by the defendant would be unjust.  Shogen v. Global Aggressive Growth Fund, Civ. No. 04-5695 (SRC), 2007 WL 1237829 (D.N.J. Apr. 26, 2007).

---

[17]    Even assuming there was a warranty, Plaintiff's claim also fails because he did not notify Unilever of his claim.  Every Smooth & Dreamy label bears a statement that consumers who are not satisfied with the product or have any questions should contact Consumer Relations.  Wenke Decl., Exs. A-H.  "A condition precedent is a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available."  Rey v. County of Hunterdon, No. HNT-L-599-03, 2005 WL 2439697, at *8 (N.J. Super. Ct. Law. Div. Sept. 23, 2005);  See   Cooper v. Samsung Elec. Am., 2010 WL 1220946, at *2.

Plaintiff does not and cannot allege that he conferred a direct benefit on Unilever. Retailers, not Unilever, set the price for the light ice cream that Plaintiff allegedly purchased, and Plaintiff paid the retailer and not Unilever for the products. Cooper v. Samsung, Civ. No. 07-3853 (JLL), 2008 WL 4513924, at *10 (D.N.J. Sep. 30, 2008), aff'd, 2010 WL 1220946. To maintain his claim, Plaintiff must allege a direct relationship between himself and Unilever, and not with a retailer. Id. at *10. As the court stated in Cooper when it dismissed the unjust enrichment claim, "although Cooper alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through Cooper's purchase, as the purchase was through a retailer …". Id.; see also Nelson v. XACTA 3000, Civ. No. 08-5426 (MLC), 2006 WL 4119176, at *7 (D.N.J. Nov. 24, 2009); Premier Pork L.L.C. v. Westin, Inc., Civ. No. 07-1661, 2008 WL 724352, at *15 (D.N.J. Mar. 17, 2008).

Second, Plaintiff's unjust enrichment claim fails because Plaintiff expected no payment from Unilever. The doctrine of unjust enrichment requires "that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109 (App. Div. 1966); see also VRG Corp. v. GKN Realty

Corp., 135 N.J. 539, 554 (1994); Prima v. Darden Rest., Inc., 78 F. Supp. 2d 337, 355 (D.N.J. 2000).

Further, Plaintiff's claim fails because unjust enrichment is an equitable remedy that is unavailable where, as here, plaintiff is seeking solely economic damages, for which there is an adequate legal remedy. F. Bender Inc. v. Jos. L. Muscarelle, Inc., 304 N.J. Super. 282, 285-86 (App. Div. 1997). Finally, an unjust enrichment claim which is essentially a dressed up tort claim must fail where the underlying tort claim fails to state a claim. See In re Schering-Plough, 2009 WL 2043604. Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim.

## POINT VII

## PLAINTIFF FAILS TO STATE A CLAIM
## FOR INJUNCTIVE RELIEF

The claim for injunctive relief must fail as well since injunctive relief is a judicial remedy, not a cause of action. As this Court noted in Heindel v. Pfizer, Inc., "[p]laintiffs' claims for injunctive and equitable relief do not constitute separate causes of action." 381 F. Supp. 2d 364, 368 (D.N.J. 2004). In Heindel, plaintiffs "acknowledged that their claim for injunctive relief is not a separate cause of action" and, apparently, that claim was withdrawn or dismissed with plaintiffs' consent. Id. See also Secure Energy v. Coal Synthetics, No. 4:08 CV 1719 (JCH), 2010 WL 1691184, at*3 (E.D. Mo. Apr. 27, 2010) (injunctive relief is

a remedy, not an independent cause of action).  Similarly here, the cause of action

for injunctive relief should be dismissed outright or withdrawn.

## **CONCLUSION**

For the reasons set forth above Unilever respectfully requests that the

Court dismiss the Complaint and grant such further relief as the Court deems just

and proper.

Respectfully submitted,

Dated:   June 8, 2010
Princeton, New Jersey

**HERRICK, FEINSTEIN LLP**

By:   s/ Ronald J. Levine
Ronald J. Levine, Esq.
rlevine@herrick.com
Jonathan E. Luick
210 Carnegie Center
Princeton, New Jersey 08540
609.452.3800

40