IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MATHEW ERCOLINE, on behalf of )
Himself and on behalf of all )
others similarly situated, )
) 10-cv-01747
)
Plaintiff, )
)
UNILEVER UNITED STATES, INC. )
)
Defendant. )

## SOBOTA'S OBJECTION TO
## CLASS ACTION SETTLEMENT

Cassandra Lynne Sobota, through counsel, Christopher V.

Langone, brings this memorandum in support of her objection to final

approval of this class action settlement.

## INTRODUCTION

This class-action settlement is not the superior way to revolve

litigation over Unilever's ice-cream-labeling practices.  As the Supreme

Court stressed in *Amchem, "*When a district court certifies for class

action settlement only, the moment of certification requires

"heightene[d] attention," *Amchem*, 521 U.S., at 620, to the justifications

for binding the class members." *Ortiz v. Fibreboard Corp*., 527 U.S.

815,citing *Amchem*.  Since the time Objector Sobota objected to

1

preliminary approval in her motion to reconsider, at least one new lawsuit targeting Defendants' deceptive ice-cream labeling practices has been filed.  One suit claims that the Breyers Smooth and Dreamy ½ Fat All Natural Ice Cream contains alkalized cocoa power – a "chemically altered cocoa powder which contains potassium carbonate, sodium carbonate or other alkaline substances."  This case is pending Judge Walls in the District Court of New Jersey, *Catanese v. Unilever*, 2010 c 5755.

The interests of the class seems best served if this Court denies this class- action settlement and allows litigation to proceed further, under the lens of genuine and legitimate adversarial scrutiny and at least a modicum of discovery.  On this record the value of the claims cannot be adequately evaluated.  Other litigants are emerging that are willing to step up to the plate and wage a legitimate fight rather than folding in the face of nothing more than a filed 12(b)(6) motion.  Perhaps the *Ercoline* matter and *Catanese* case can be consolidated and all consumer issues related to Defendant's Ice Cream labeling practices can be dealt with on a common basis.  As the Supreme Court held in *Amchem*, the standards under Rule 23 are not relaxed simply because it is a settlement is proposed – a class action still needs to be superior and

class counsel still has to be adequate.  As argued herein, Class Counsel quick willingness to abandon the ship is compelling evidence of their inability to captain it.

Sobota respectfully requests that this Court deny approval of this $0-to-the-class settlement.  Defendant Unilever, in exchange for a $200,000 payoff to class counsel, is getting a class-wide release for various food-labeling violations that are not only the subject of this class action, but other pending litigation as well.

**1.     This is a strong case of false advertising and mislabeling and thus the claims should not be released for $0.00.**

Class Counsel asserts that, "the range of reasonableness considering the best possible recovery and the risks of litigation—also support approval of the settlement." Defendant cites, "The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)."  This essential constitutes the entire argument in support of the notion that it is acceptable for the class members to release all of their claims in exchange for $0.  $0 is not within the range of a reasonable settlement.

No reasonable plaintiff would settle a case at this stage of the litigation for $0 and allow their lawyers to pocket almost a quarter of a million dollars. Essentially, Class Counsel is asserting that there is a 0% chance of recovering any monetary damages for the class.

Class Counsel is asserting that the case only has value on an injunctive basis.  Of course the case was not brought as a Rule 23(b)(2) injunction class, nor would such a claim support jurisdiction under the Class Action Fairness Act (CAFA).  No evidence has been presented on this record that would justify certifying the class under Rule 23(b)(2). This case was brought as a money-damages class under Rule 23(b)(3), alleging a claim with a value in excess of $5,000,000; the Rule 23(b)(3) claim are being settled for nothing. Moreover, other class actions have recently been filed regarding Breyers' deceptive practices in labeling its' ice cream as "all natural." Thus proposed injunctive relief does not end litigation related to this, or other deceptively labeled ice cream. Also, the proposed label does not require Defendant to compare ice creams to a market basket of similar ice cream i.e., chocolate for chocolate, vanilla for vanilla, etc.  Defendant should also be required to disclose the market basket and how it is composed.  This is required by

regulation. The Court's approval of the settlement might seem to give Defendant permission to avoid complying with all FDA regulations.

Despite the problems with approval of the proposed settlement and adequacy of class counsel, this case is a strong false advertising case. In the United States, labeling of food is regulated by the Food and Drug Administration (FDA). Class Counsel asserts that Defendant violated FDA regulation, 21 CFR 101.13 regulating "Nutrient content claims." First, our investigation shows that in response to a phone call to the toll-free number listed on the ice cream box the customer service represented that Smooth and Dreamy has 1/3 less calories than <u>Regular Breyer's Ice Cream</u>. There is no evidence in the record indicating that Defendant uses a "market basket" as its reference food. Indeed, based upon the statement of Defendant's customer service representative Defendant, in fact, uses <u>regular Breyer's ice cream</u> as the reference food. Thus, Plaintiff has stated a claim for violation of the FDA regulation. The case is not preempted and damages for the ascertainable loss, (*i.e.* the purchase price,) can be recovered under the principles outlined in *Lee v. Carter-Reed Co*., L.L.C., 203 N.J. 496 (2010). The New Jersey Supreme Court has stated that the ascertainable loss for

purchase of a credence good that is falsely advertised "is the purchase price.".  See *Lee* at 527.

Defendant's Response to the Issues Raised by the Motion to Reconsider were not properly addressed. Class Counsel argues that "the New Jersey Supreme Court's decision in *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010), cited by Sabota, is not relevant in this situation as ice cream is not a "credence good" which the public could know nothing other than what was represented by the manufacturer." Class Counsel makes this assertion without support.  Most foods are credence goods. (*See* "Economic of Food Labeling," by Elise Golan, Fred Kuchler, and Lorraine Mitchell with contributions from Cathy Greene and Amber Jessup. Economic Research Service, U.S. Department of Agriculture. Agricultural Economic Report No. 793 at www.ers.usda.gov/publications/aer793/aer793.pdf. Particularly, "light" ice cream is a credence good. A consumer cannot determine the difference between regular ice cream and "light" ice cream.  Thus, *Lee v. Carter-Reed Co., LLC* does apply and supports a strong argument that the class can obtain monetary damages in the form of loss of "purchase price" for fraudulent sale and advertising of a "mislabeled" credence good.

6

The evidence suggests that Defendant uses Breyer's regular ice cream as reference food, that Defendant mislabels its Smooth & Dreamy Ice Cream in violation of 21 CFR § 101.13, and Defendant misleads consumers into buying a bogus "light" ice cream. If plaintiff proves that Defendant mislead consumers into buying falsely-labeled food, and that the purchase price is a recoverable ascertainable loss under the N.J. Consumer Fraud Act as held in *Lee v. Carter-Reed Co.*, L.L.C., 203 N.J. 496, 527 (2010), then the recoverable damages would surely be in the millions of dollars.  So if the class has a 1% chance of recovering then a $0-to-the-class settlement is not reasonable and violates the eighth and ninth *Girsh* factors.

Defendants falsely represent that Smooth & Dreamy has 1/3 fewer calories than "regular" ice cream.  This statement is untrue regardless of whether the "reference food" regular ice cream is Breyer's regular ice cream or a "market basket" of leading brands.  By either standard, Defendants inflated the caloric value of the "reference food" regular ice cream in order to attempt to qualify as a "light" ice cream.  Defendants' conduct violates FDA regulations and is actionable under the N.J. Consumer Fraud Act.

"Light" ice cream is a "credence good."  A "credence good" is a product that's advertised benefits cannot be determined by inspection by the consumer. Rather, the consumer must rely on the representations of the seller on faith that the product provides the benefits claimed by the seller.  Drugs are a classic example of a "credence good" – a consumer cannot determine by visual inspection or even taste whether a pill will provide the claimed benefits. Likewise, "light" foods including "light" ice cream are "credence goods."  A consumer has no ability – by inspection – to differentiate a full-fat, high caloric, ice cream from a "light" ice cream.  Instead, the consumer must take on "faith" (through relying on the labeling and packaging) that the ice cream they purchased (or intend to purchase) is, in fact, a "light" ice cream.

The FDA has identified that obesity is a problem in America.  The FDA is aware that food marketers may try to sell food products by appealing to consumers' desire to be health conscious.  The FDA has established a regulatory system that limits what foods can be claimed to be "light" foods.  Contrary to defense counsel's argumentative unsupported assertions in the Motion to Dismiss, Defendant has not complied with FDA regulations.  For instance, FDA Regulation 21 CFR 101.13(j)(1)(i)(B) deals with "light" food labeling.  Evidence suggests

8

that Defendant has not complied with this regulation.  The FDA provides

guidance for industry in its Guidance for Industry A Food Labeling

Guide. See

http://www.fda.gov/food/guidancecomplianceregulatoryinformation/g

uidancedocuments/foodlabelingnutrition/foodlabelingguide/ucm06490

8.htm.

> The guide offers answers and questions: For example:
>
> N32. What is an appropriate reference food for a food bearing a
> "Light" claim?
>
> Answer: The reference food must be a food or group of foods that
> are representative of the same type as the food bearing the claim.
> For example, a chocolate ice cream would use as its reference
> food other chocolate ice creams.

21 CFR 101.13(j)(1)(i)(B).

The nutrient value for "fat" or "calories" in a reference food that is

being used as a basis for a "light" claim can be determined in several

ways:  it may be a value in a representative, valid, data base; an average

value determined from the top three national (or regional) brands of the

food, a market basket norm; or where its nutrient value is representative

of the food type, a market leader. 21 CFR 101.13(j)(1)(ii)(A). The nutrient

value used as a basis for a 'light' claim should be similar to that

calculated by averaging the nutrient values of many of the foods of the

type. It should not be the value of a single food or group of foods at the high end of the range of nutrient values for the food. When compared to an appropriate reference food, a "light" food should be a food that the consumer would generally recognize as a food that is improved in its nutrient value compared to other average products of its type. 21 CFR 101.13(j)(1)(ii)(A)."

As this guide suggests, the reference food must be of a similar type. The guide gives as a specific example that the reference to chocolate ice cream needs to be compared to chocolate ice cream.  The settlement's proposed injunctive language does not meet this standard. Breyer's must compare itself not to a range of full-fat ice cream, but in the case of chocolate they must either compare to regular Breyer's chocolate ice cream or a "market basket" that complies with 21 CFR 101.13 and other applicable federal regulations. The case is strong, not weak and thus $0 to the class is not reasonable.

  2.   **The Settlement Doesn't Meet the Standards
       For Approval Under FRCP 23.**

This type of settlement offer made by Defendant and accepted by Class Counsel creates a natural antagonism between Class Counsel, the

Class Rep and absent class members.  As the Seventh Circuit recently

explained about class actions:

> Class action attorneys have an "inherent motivation" to enrich
> themselves at the expense of the class (and with the connivance of
> defendants), but motivation is not a synonym for action; any actual
> corruption or selling out is gauged case by case...

> The criticisms in our opinion of the tactics employed by some class
> action lawyers are not criticisms made by judges alone, let alone
> by judges of the Seventh Circuit alone or members of this panel
> alone. Our opinion gave some examples: "The defendant wants to
> minimize outflow of expenditures and the class counsel wants to
> increase inflow of attorneys' fees. Both can achieve their goals if
> they collude to sacrifice the interests of the class." Christopher R.
> Leslie, "The Significance of Silence: Collective Action Problems
> and Class Action Settlements," 59 Fla. L. Rev. 71, 79-81 (2007)
> (footnote omitted); see also John C. Coffee, Jr., "Litigation
> Governance: Taking Accountability Seriously," 110 Colum. L. Rev.
> 288, 326-27 (2010). Two of the examples were opinions by Judge
> Henry Friendly, the very respected Second Circuit judge: Saylor v.
> Lindsley, 456 F.2d 896, 900-01 (2d Cir. 1972); Alleghany Corp. v.
> Kirby, 333 F.2d 327, 347 (2d Cir. 1964) (dissenting opinion). We
> gave additional examples in our first opinion in the clothes dryer
> litigation:  [*15] Parker v. Time Warner Entertainment Co., L.P.,
> 331 F.3d 13, 22 (2d Cir. 2003); Newton v. Merrill Lynch, Pierce,
> Fenner & Smith, Inc., 259 F.3d 154, 165-68 (3d Cir. 2001); Jeffrey W.
> Stempel, "Class Actions and Limited Vision," 83 Wash. U. L.Q.
> 1127, 1213-14(2005); Bruce L. Hay & David Rosenberg,
> "'Sweetheart' and 'Blackmail' Settlements in Class Actions," 75
> Notre Dame L. Rev. 1377, 1389-92 (2000); Bruce L. Hay,
> "Asymmetric Rewards: Why Class Actions (May) Settle for Too
> Little," 48 Hastings L.J. 479, 485-89 (1997); Susan P. Koniak &
> George M. Cohen, "Under Cloak of Settlement," 82 Va. L. Rev.
> 1051, 1053-57 (1996) (describing the class action as "lawyer self-
> dealing on a grand scale," id. at 1053); Jonathan R. Macey &
> Geoffrey P. Miller, "The Plaintiff's Attorney's Role in Class Action
> and Derivative Litigation," 58 U. Chi. L. Rev. 1, 22-26 (1991). And

the criticisms can be found in other opinions of this court. See, e.g., Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir. 2001); Blair v. Equifax Check Services, Inc., 181 F.3d 832, 834 (7th Cir. 1999); Vollmer v. Selden, 350 F.3d 656, 660 (7th Cir. 2003); In re Rhone-Poulenc Rorer, Inc., supra, 51 F.3d at 1298-99. Want more? There is plenty more, including references in Supreme Court as well as court of appeals opinions to the danger of collusion between class action lawyers and defendants' lawyers. Stoneridge Investment Partners, LLC v. Scientific-Atlanta, 552 U.S. 148,163-64, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008); Ortiz v. Fibreboard Corp., 527 U.S. 815, 852-53, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999); AmChem Products, Inc. v. Windsor, 521 U.S. 591, 621-22, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 740-41, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975); Sullivan v. DB Investments, Inc., 613 F.3d 134,149-50 (3d Cir. 2010); In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 802 (3d Cir. 1995); Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 524 (1st Cir. 1991); In re "Agent Orange" Product Liability Litigation, 818 F.2d 216, 223-25 (2d Cir. 1987); Piambino v. Bailey, 757 F.2d 1112, 1139 and n. 68 (11th Cir. 1985); Shelton v. Pargo, Inc., 582 F.2d 1298, 1306-07 (4th Cir. 1978); Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1169 (5th Cir. 1978). There are also references to settlement extortion: Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C., 197 F.3d 1190,1193 (7th Cir. 1999); Byrne v. Nezhat, 261 F.3d 1075, 1129-31 (11th Cir. 2001); [*17] Duhaime v. John Hancock Mutual Life Ins. Co., 183 F.3d 1, 6-7 (1st Cir. 1999). Neither the judges on this panel nor other federal judges so far as we are aware have denied that the class action is a worthwhile device, and indeed is indispensable for the litigation of many meritorious claims. But like many other good things it is subject to abuse."

Thorogood v. Sears, 10-2407 (7th Cir., Dec. 2, 2010), attached as <u>Exhibit A.</u>

This case certainly presents an appearance of class action abuse. The class is giving up valuable claims for no compensation and a meaningless change in labeling practice. In addition, class members are giving up claims against unrelated entities that are not even parties to this litigation. Counsel only investigated the claim for a maximum of 12 days prior to filing it, did not amend the complaint to name to proper parties, did not cite to applicable FDA regulations, did not properly engage in credence good analysis, overlooks important favorable precedents and did not challenge Defendants' motion to dismiss. No formal discovery was propounded or taken. The motion for preliminary approval was not even supported by an affidavit demonstrating proposed class counsels' qualifications, let alone any evidence sufficient to support that $0.00 is reasonable compensation to the class. In addition to the arguments regarding the value of the claims made above, and in addition to the objections made by her at the preliminary approval stage, Sabota makes the following additional objections:

  A. *Insufficiency of Evidentiary Proof*:  Plaintiff's counsel are allowing Defendants to buy off the claims of a nationwide class in exchange for a windfall payment of $200,000 to the lawyers who filed a case claiming it was worth $5,000,000. Plaintiff's counsel did little in the

few months this case was pending before it was "settled" for no money to the class.  Class Counsel doesn't even submit an affidavit explaining why it is appropriate to abandon the case for a payment of $0. The only affidavit submitted in this case alleges that arbitration is not required because the damages exceed $50,000.

B.  *Inadequate Notice*: The notice is inadequate, attempts to impose needless barriers to objectors (by for instance "threatening them" with the prospect of a deposition, and unjustifiably requiring them to list any prior class-action objections they filed), and does not comply with the plain language of Rule 23(h). Also, the no-publicity clause coupled with the weak publication notice does not meet due process. The fact that not a single class member responded as of the time of the filing of the motion for final approval suggest minimal notice was not adequate. If you Google, "Breyers Ice Cream Class action" the website http://ercolinesettlement.com/ does not appear in the results. Thus the notice does not seem adequate.

C.  *Circumstances Suggesting Collusive Or Uninformed Negotiation*:  The Court should consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain

class members, or excessively compensates attorneys. See *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080, 13-14 (E.D. Mo. Dec. 8, 2009); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008). "Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of insuring a fee, the court is obliged to ascertain that the settlement was reached as a result of good-faith bargaining at arm's length." *Domonoske v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 7242 (W.D. Va. Jan. 27, 2010), citing, *In re Montgomery Co. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979) (citing *Percodani v. Riker-Maxson Corp.*, 50 F.R.D. 473, 477 (S.D.N.Y. 1970)). The no publicity clause, the minimal notice and the quick settlement all suggest hallmarks of class action abuse.

Factors to be considered in the fairness calculus include: (1) the posture of the case at the time settlement was proposed; (2) the extent of the discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in class action litigation. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Application of these factors mandates denial of approval.  First, the case was in its nascent stages at the time of settlement in a very early

posture.  At the time of settlement, Plaintiff's counsel had to respond to a 50-page motion to dismiss.  Instead, Plaintiff folded.  Plaintiff has never filed an Amended Complaint to named the allegations or to name Conopco, Inc.

Plaintiff had issued no formal discovery.  Any information obtained during "informal" discovery has not been made public or disclosed in the pleadings.  The circumstances surrounding settlement are allegedly that after Defendant filed a 50-page motion to dismiss on June 8, 2010, the parties began to discuss settlement. In July 2010, Plaintiff sought an extension of time to respond to the motion to dismiss on the grounds that Plaintiff wanted to continue exploring the possibility of settlement.  The parties signed the $0 to the class settlement agreement on September 15, 2010.  Apparently, no mediation or settlement conference took place.

Moreover, the settlement is odd with respect to two features:  First, is minimal notice:  one ad in the USA today and a website coupled with a prohibition on publicity of the settlement by class counsel.  Second, the settlement agreement sets up barriers against objectors - a requirement to attend a deposition and mandatory disclosure of the objector's history of objections.

16

3.   **Putative Class Counsel and the Class Representative Have Not Demonstrated, with Evidence, that they can Satisfy FRCP 23(a)(4).**

Rule 23(a), of course, requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). The Third Circuit has held that adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and able to conduct the litigation [and second] plaintiff must not have interests antagonistic to those of the class" *Smith*, 2007 WL 4191749, at *4. Class Counsel argues that they are exceptionally well-qualified, experienced and thoroughly familiar with complex class action litigation. That may well be. The question is more importantly whether the structure of the settlement creates a natural antagonism that renders class counsel inadequate.

Class Counsel argues in a conclusory fashion that "Plaintiff also fairly and adequately represents the interests of the Class. Plaintiff's interests are coextensive with, and not antagonistic to, those of the unnamed, absent members of the Class."  While Class Counsel parrots these words, they do not explain why a $0-to the class settlement (and $200,000 to them) does not create an antagonism between class counsel and the class.

17

The Plaintiff has certainly uncovered a mislabeled product.  But his lawyers have gone about the wrong way of proving it.  Breyer's Smooth and Dreamy Ice Cream is mislabeled in violation of FDA regulations. Defendant Unilever misrepresents the Smooth and Dreamy Ice Cream has 1/3 fewer calories than regular ice cream but also misrepresents the caloric content of the "reference food" regular ice cream.

Plaintiff's lawyer seem not to understand basic FDA food labeling law, if they did understand it they could have proven the double misrepresentation of the label, the false 1/3 fewer calories claim and the overstatement of reference food caloric content.

Take, for example, Exhibit A regarding the butter pecan flavor. The label prominently states 1/3 fewer calories than regular ice cream. The package also makes the statement, "Breyers All Natural Light Butter Pecan Ice Cream 130 Calories Regular Butter Pecan Ice Cream 200 Calories."  Defendant Unilever owns two major brands, Breyers and premium brand Ben & Jerry's.  The other market leaders include private label brands like Safeway Select, Dreyer's/Edy's and Blue Bell.

Edy's Ice Cream Parlors Butter Pecan has 170 calories per serving. Edy's Fun Flavors Butter Pecan has 130 calories. Safeway Select has 170 per 1/2 cup.  Blue Bunny has 150 calories per serving.  Blue Bell Butter

Pecan has 180 calories per serving. Walgreens private label Butter Pecan brand has 170 calories per serving. These flavors and calorie counts reflect the relevant "market basket."  None of these brands has 200 calories per serving, which is what would be required to make Defendant's representations accurate.

In reply, Defendant Unilever may try to include Haagen Dazs in the relevant market basket. This premium high caloric high fat ice cream has 310 calories per serving in its butter pecan.  But even if you add this outlier to the market basket (including Edy's two branded Butter Pecan flavors, Safeway Select, Walgreens, Blue Bell and Blue Bunny) the average calories are still only 182 – not enough to make Defendant's representations true.  A Butter Pecan Ice Cream with 130 calories does not even have 25% fewer calories than a market basket including even Haagen Daazs.  Since the Smooth & Dreamy Butter Pecan fails to have 25% fewer calories than the market basket of regular ice cream, it is not entitled to use the "light" label or even mention calories in comparison.

Class Counsel's justification of the $0-to-the-class settlement is, "For settlement purposes, the parties have agreed that given the forward-looking relief described above, a settlement involving no direct compensation to absent Class members is reasonable under the

circumstances of this case." This argument does not pass muster.  It

should be rejected.  Class Counsel has not met its burden of

establishing that the settlement is reasonable in light of the chance that

the class has to recover the purchase price as an ascertainable loss

under N.J. law.

Moreover, our investigation has demonstrated that Defendant's

market basket defense may be in bad faith.  In a call to Unilever's

customer service number, the Unilever customer service representative

stated that Smooth & Dreamy as 1/3 fewer calories than Regular Breyer's

Ice Cream. The customer service representative did not state that

Smooth & Dreamy has 1/3 fewer calories than a market basket or a

range of averages of full fat ice cream.

The sole relief being offered to the class is described in Section 4.2

of the settlement agreement, which provides:

> 4.2 Modification of Label. Beginning on or before the later of
> March 1, 2011, or thirty (30) days after the Effective Date, if
> the label of the Smooth & Dreamy Light ice cream tub
> includes a comparison of the fat and calories in the ice cream
> with regular ice cream as it is currently labeled, the Product
> will be manufactured with a label modified to include the
> following statement: "This product has - calories and - fat per
> serving vs. a range of full fat ice creams that averages -
> calories and - fat per serving" (hereinafter "the Modification")
> in a form and location similar to Exhibit A hereto. It is
> understood and agreed that the Modification may not appear

20

on labels on the Product in retail stores until after the aforementioned date since the then existing inventory of the Product without the Modification may continue to be sold. This Modification will not in any way restrict any other changes in the future design or contents of the label. The Modification shall at all times be subject to the applicable laws or regulations.

This is the sole relief being offered to the class, even though the complaint alleged (and claimed the jurisdictional amount was met) disgorgement of all profits. The proposed injunctive relief allows Breyer's to continue to use the challenged, "1/3 Fewer Calories Than Regular Ice Cream" statement on its product packaging.  Consumers deciding which brand to purchase will still see the calorie misrepresentation on the box.  The proposed disclosure will be obscured on the back on the carton, obscured by other information.  The new disclosure is neither clear nor conspicuous.

The N.J. Consumer Fraud Act, which applies to the conduct of Defendant, is a powerful remedial statute.  Plaintiff Ercoline has alleged an ascertainable loss resulting from the false advertising practices of Defendant.  Plaintiff has sought disgorgement of profits from Defendant under common law unjust enrichment.  Additionally, the N.J. Consumer Fraud Act allows for disgorgement of profits.  Parties could be identified

21

through proof of purchase and receipts and claim into a common fund of disgorgement.  If Rule 23 can be met a common fund can be created.

Typically unjust enrichment classes are not certified on nationwide basis.  But since Defendant conducts itself from N.J.  The N.J. can apply to the conduct directed outward toward the nation and the N.J. CFA can be used for a fluid recovery of disgorgement of profits.

## 4.    The Notice Does Not Comply with Rule 23(h)

Recently, the United States Court of Appeals for the Ninth Judicial Circuit addressed the issue of Class Members' due process rights when it comes to the issue of objecting to attorneys' fees in a class action. *Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp*., 2010 U.S. App. LEXIS 17189, 12-18 (9th Cir. Cal. Aug. 18, 2010).  There, the Ninth Circuit stressed that, "although a district court has broad discretion to determine attorneys' fees, it abuses that discretion if it makes an error of law." *Id*. citing, *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

Specifically the Court held:

We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before

22

the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.

*Mercury Interactive*, at *13.

The Court found this holding mandated by both the plain language of Rule 23(h), as well as due process rights under the constitution.

The relevant portions of Federal Rule of Civil Procedure 23(h) provide: (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. (2) A class member, or a party from whom payment is sought, may object to the motion." (Fed. R. Civ. P. 23(h), emphasis added).  As the Ninth Circuit explained, "The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed." *Id*.

The Court found its holding was supported by the Advisory Committee Notes to the 2003 amendments to Rule 23(h). These notes elaborate that "[i]n setting the date objections are due, the court should

23

provide sufficient time after the full fee motion is on file to enable

potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003

Advisory Committee Notes, P 68 (emphasis added). The Ninth Circuit

stressed, that "the Advisory Committee Notes further contemplate that,

in appropriate cases, the court will permit an "objector discovery

relevant to the objections." Id. P 69. Clearly, the rule's drafters

envisioned a process much more thorough than what occurred in this

case." Id. at *13-14.

The Ninth Circuit noted that commentators are also in accord with

its view.  Citing, for instance, to Moore's Federal Practice counsels that

"[a]ny objection deadline set by the court should provide the eligible

parties with an adequate opportunity to review all of the materials that

may have been submitted in support of the motion and, in an

appropriate case, conduct discovery concerning the fees request." 5

Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009).

The Ninth Circuit reasoned:

allowing class members an opportunity thoroughly to examine
counsel's fee motion, inquire into the bases for various charges
and ensure that they are adequately documented and supported is
essential for the protection of the rights of class members. It also
ensures that the district court, acting as a fiduciary for the class, is
presented with adequate, and adequately-tested, information to
evaluate the reasonableness of a proposed fee.

Id. at *15.

In *Mercury*, by the time objections to the fee request were due, class members could make only generalized arguments about the size of the total fee because they were only provided with generalized information. Class members  could not provide the court with critiques of the specific work done by counsel when they were furnished with no information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class. Here there is a similar situation – while $200,000 is astounding given the amount of work reflected on the docket and almost prima facie unreasonable, Class Members are entitled to notice of the motion and an advance and meaningful opportunity to scrutinize the actual billing entries. This information is also crucial to assess the adequacy of counsel, who are claiming to have billed 400 hours (at a high rate of $500 per hour) to prepare a 13-page complaint filed only 12 days after Plaintiff bought the ice cream.  Assuming Plaintiff immediately called his lawyer, and two lawyers spent 10 hours a day for the entire 12 day period working on the complaint, this would still only justify 240 hours. And of course it would

not be reasonable to staff two lawyers full-time on a complaint at $500 per hour for 12 days straight.

In *Mercury* the Ninth Circuit held "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates." The fee motion should be filed immediately and/or notice delayed until it is. And class members should be given reasonable access to the motion and all supporting materials and ample time to object in accordance with the express mandate of Rule 23(h).

This settlement does not meet the *Mercury* standard. Class Counsel has not posted the memorandum in support of the settlement on the website. Class Counsel has not put their certifications in support of fees on the website. The class has had no opportunity to examine and object to the fees as required by due process and the *Mercury* standard.

The Notice also suffers from the Class Counsel No Publicity Clause and the difficulty in finding the website through Google search. The website itself is also nondescript. The home page does not include Class Notice and states, "Welcome to the *Ercoline v. Unilever* website. Please use the links on the left to navigate the site." Carter-Reed Co., LLC does apply and supports a strong argument that the class can obtain monetary

26

damages for fraudulent sale and advertising of a "mislabeled" credence good.

For the foregoing reasons, Sabota respectfully objects to final approval of the proposed settlement.

Respectfully Submitted,
CASSANDRA SABOTA

s/ Christopher V. Langone
By One of Her Attorneys

Langonelaw
207 Texas Lane
Ithaca, New York
(607) 592-2661