# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW ERCOLINE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>UNILEVER UNITED STATES, INC.,<br><br>Defendants. | Civil Action<br>No. 2:10-cv-01747 (SRC-MAS)<br><br><br>Date: March 21, 2011<br>Time: 10:00 a.m.<br>Courtroom: 8 |

---

## OBJECTION AND NOTICE OF INTENT TO APPEAR
## OF THEODORE H. FRANK

---

Theodore H. Frank
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (703) 203-3848
Email: tedfrank@gmail.com

*In pro per*

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION.................................................................................. 1

ARGUMENT ....................................................................................... 3

**I.**    Background: The Objector and the Center for Class Action Fairness........... 3

**II.**   The Court Has A Duty Under Rule 23 To Protect Class Members From An Unfair Settlement. ................................................................................ 7

**III.**  The Unnamed Class Members Receive No Compensation At All, Which Itself Provides Multiple Reasons to Reject the Settlement. .......................... 10

**IV.**   The Settlement Creates Burdensome and Unnecessary Requirements That Will Hinder and Deter Legitimate Objectors. ............................................. 15

**V.**    The Settlement, As Such, Harms Class Members' Interests........................ 22

CONCLUSION ..................................................................................... 23

PROOF OF SERVICE ............................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
  52 F.R.D. 373 (D. Kan. 1971) ........................................................... 21

*Crawford v. Equifax Payment Services, Inc.*,
  201 F.3d 877 (7th Cir. 2000) .................................................... 12-13

*Ellis v. Edward D. Jones & Co.*,
  527 F. Supp. 2d 439 (W.D. Pa. 2007) ......................................... 21

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................. 9-10, 14

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987) ............................................................ 8

*Grove v. Principal Mut. Life Ins. Co.*,
  200 F.R.D. 434 (S.D. Iowa 2001) ........................................... 19-20

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ........................................................ 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 8

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) .................................................. 10-12

*In re Cendant Corp. Litigation*,
  264 F. 3d 201 (3d Cir. 2001) ............................................. 1, 7, 10

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir.1981) ....................................................... 20

*In re General Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir.1979) ..................................................... 21

*In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3rd Cir. 1995) ..................................... 7, 9, 10, 20-21

---

*In re Prudential Ins. Co. of Am. Sales Practices,*
     148 F.3d 283 (3d Cir. 1998) ........................................................... 12

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
     834 F.2d 677 (7th Cir. 1987) .......................................................... 21

*Mirfasihi v. Fleet Mortgage Corp.,*
     356 F.3d 781 (7th Cir. 2004) ....................................................... 1, 8

*Molski v. Gleich,*
     318 F.3d 937 (9th Cir. 2003) ................................................... 12-13

*Murray v. GMAC Mortg. Corp.,*
     434 F.3d 948 (7th Cir. 2006) ........................................ 12-15, 17, 22

*Petruzzi's, Inc. v. Darling-Delaware Co.,*
     880 F. Supp. 292, 297 (M.D. Pa. 1995) ..................................... 20-21

*Silber v. Mabon,*
     957 F.2d 697 (9th Cir. 1992) ........................................................... 8

*Staton v. Boeing Co.,*
     327 F.3d 938 (9th Cir. 2003) ......................................................... 8-9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
     463 U.S. 646 (7th Cir. 2006) ..................................................... 11-12

## STATUTES AND FEDERAL RULES

Fed. R. Civ. Proc. 23 ..................................................................... 7

Fed. R. Civ. Proc. 23(a)(4) ............................................. 12, 14, 15, 24

Fed. R. Civ. Proc. 23(e) ........................................................ 7, 12, 15

Fed. R. Civ. Proc. 23(e)(2) ............................................................ 12

## OTHER AUTHORITIES

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) ........................................................................................ 19

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ....................................................................................................... 5

Frankel, Alison, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," *Litigation Daily* (Nov. 30, 2010) ........................................... 6

Klonoff, Robert H., *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727 (2008) ...................................................... 19

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007) ..................... 20

Newberg, Herbert & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3rd ed. 1992) .................................... 9

Newberg, Herbert & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002) ................................. 7-8

UNILEVER ANNUAL REPORT AND ACCOUNTS (2009) .............................................. 10

Zahorsky, Rachel M., "Unsettling Advocate," *ABA Journal* (April 2010) ............ 6-7

## INTRODUCTION

"Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). In class actions "there is often a conflict between the economic interests of clients and their lawyers, and this fact creates reason to fear that class counsel will be highly imperfect agents for the class. Because of this conflict (and because "the class" cannot counteract its effects via counsel selection, retention, and monitoring), an agent must be located to oversee the relationship between the class and its lawyers. Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001).

The proposed settlement agreement is a striking example of opportunistic behavior by class counsel, who have structured the settlement so as to pay their own legal fees while providing plaintiffs—whose interests counsel is charged to represent—with no financial compensation whatsoever. If the proposed agreement is approved, class counsel will be eligible to receive $200,000; one class representative will be eligible to receive $5,000; but the plaintiffs that class

counsel has a duty to represent will receive no payment at all. This compensation structure is starkly unfair; as a matter of law, appellate courts in other circuits have repeatedly and unanimously held the approval of materially almost identical class action settlements to be an abuse of discretion. This agreement therefore invites the court to fulfill its responsibilities to the class and to the public by denying judicial approval.

Under this agreement, plaintiffs who are not class representatives will receive no compensation whatsoever, although it is true that the public will receive a change in the phrasing of ice cream labeling.  There is a large question as to whether consumers receive any benefit from this change at all. But there is little question about the harm that consumers will suffer should the court approve this settlement. Any business forced to pick up the tab for a settlement for a judgment of (speaking roughly) a quarter-million dollars will likely seek to recover those costs somewhere else. Such expenses are ultimately passed off to the public in the form of higher prices and fewer consumer choices.

Furthermore, the settlement agreement seems almost designed to deter legitimate objections. It is larded with provisions that make the work of legitimate objectors far more difficult and burdensome than necessary—such as the disallowance of electronic notice, the insistence that objectors supply trivial years-

old purchase information that a reasonable person could not be expected to recall, and the multiple warnings that objectors may be subject to deposition. Most troubling is the provision that requires all objectors to reveal extensive biographical information about themselves—information with no connection whatsoever with the matter before the court.

In light of these obvious deficiencies, the Court should reject the proposed settlement—and not only because it extinguishes all claims of class members while providing them with nothing (with the exception of the named plaintiff) that is not available to the general public. Which is to say, nothing.

## ARGUMENT

### I.    Background: The Objector and the Center for Class Action Fairness.

Theodore H. Frank (business address 1718 M Street NW, No. 236, Washington, DC 20036 (703) 203-3848) purchased one box of Breyers Smooth & Dreamy Vanilla Fudge Brownie Sandwiches and one box of Breyers Smooth & Dreamy Chocolate Chip Cookie Dough Sandwiches between August 1, 2010 and September 15, 2010 at either Giant, Harris Teeter, or Safeway in Arlington, VA. He is therefore a member of the class.

Mr. Frank also purchased at least one container of Breyers Smooth & Dreamy Cookies & Cream in between 2007 and 2009 at either Giant, Harris

Teeter, or Safeway in Arlington, VA. He thinks it is likely that he purchased at least one container of Breyers Smooth & Dreamy Strawberry Cheesecake, at least one container of Breyers Smooth & Dreamy Vanilla Bean, and at least one container of Breyers Smooth & Dreamy Chocolate Fudge Brownie in between 2005 and 2009 at either Giant, Harris Teeter, or Safeway in Arlington, VA, but his memory of these purchases is less certain. There may be additional purchases of Breyers Smooth & Dreamy products that he does not recall.

Between December 15, 2005 and December 15, 2010, Mr. Frank has personally objected to the following class action settlements: *In re Grand Theft Auto Video Game Consumer Litigation*, No. 06-MD-1739 (S.D.N.Y.) (court decertified class after objection); *In re TD Ameritrade Account Holder Litig.*, No. 07-C-2852 (N.D. Cal.) (court rejected settlement as unfair); and *Robert F. Booth Trust v. Crowley*, No. 1:09-CV-05314 (N.D. Ill.), No. 10-3285 (7th Cir.) (court denied motion to intervene in Rule 23.1 shareholder derivative action; currently pending on appeal).

Mr. Frank is the founder of The Center for Class Action Fairness. The Center is a non-profit public-interest law firm that represents consumers *pro bono* as part of the 501(c)(3), DonorsTrust. It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional

objectors." A number of "professional objectors" are for-profit attorneys that attempt to or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith). *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36. This is not the business model of The Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys. Furthermore, the Center has never settled an objection. The Center analyzes complaints from consumers aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members; as a non-profit with limited resources, it must restrict itself to objecting only to the most egregiously bad settlements. The Center's litigation on behalf of consumers has been covered by *Forbes* and the *National Law Journal*; it is featured in the April 2010 issue of the *ABA Journal*.

Mr. Frank is a graduate of the University of Chicago Law School, which he attended on a Public Service Scholarship. He is an elected member of the American Law Institute; he has written and spoken across the country about class action law and the principal-agent problems in class action settlements, including

being quoted in the *New York Times*, *Wall Street Journal*, *Chicago Tribune*, and a number of legal journals on the subject.

Via the Center, Mr. Frank has represented consumers *pro bono* in a number of cases where class members wished to object to unfair settlements where the benefit to the attorneys exceeded the benefit to the class and/or where class members received nothing of value in the settlement. *See, e.g., True v. American Honda Motor Co.*, No. 07-CV-287 (C.D. Cal.) (rejecting coupon settlement); *Lonardo v. Travelers Indemnity*, No. 06-CV-962 (N.D. Ohio) (objection resulted in modified settlement with 71% increase in class pecuniary recovery from $2.8M to $4.8M); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840 (D. Kan.) (rejecting settlement for failure to meet Rule 23 standard); *In re Apple Inc. Securities Litig.*, No. C-06-5208 (N.D. Cal.) (objection resulted in modified settlement with $2.5 million in additional funding available for class settlement fund). *See also* Alison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," *Litigation Daily* (Nov. 30, 2010); Rachel M. Zahorsky, "Unsettling Advocate," *ABA Journal* (April 2010) ("'What Ted is doing is something very necessary: being there to protect classes from potentially collusive settlements between businesses and lawyers,' says Todd Zywicki, a George Mason

University law professor."). Mr. Frank does not interpret the class notice to require listing his representations as an attorney; in any event, such representations are irrelevant under Rule 23(e) ("*Any* class member may object," emphasis added).

Mr. Frank intends to appear and object in person at the final approval hearing. He reserves the right to cross-examine any witnesses who testify in support of settlement approval.

## II. The Court Has A Duty Under Rule 23 To Protect Class Members From An Unfair Settlement.

Because class actions can create unique conflicts of interest between lawyers and their clients, an independent agent is needed to oversee this relationship: "Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3d Cir. 2001). "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed.

2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; the settlement must be objectively reasonable as well. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the

merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained.").

A court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) (quoting Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)). The Court should apply "heightened scrutiny" when the settlement was achieved before class certification, as this settlement was. *Id.* at 807 (citing cases and authority).

In the Third Circuit, one starting point for determining whether a settlement is "fair, reasonable, and adequate" (*id.* at 785) is the assemblage of factors this court established in *Girsh v. Jepson,* 521 F.2d 153 (3d. Cir. 1975). A number of the relevant *Girsh* factors weigh against approval of the settlement. Relatively few resources have been invested in "the proceedings and the amount of discovery completed," *id.*; for instance, the extent of discovery described in the settlement agreement consists of Unilever and the named plaintiff engaging in "informal discovery." Settlement (Docket No. 2-10-cv-01747-SRC-MAS), at ¶ 1.5. Because Unilever's net income was over $5 billion last year (UNILEVER ANNUAL REPORT

AND ACCOUNTS 80 (2009)), its "ability to withstand a greater judgment," *Girsh,* at 157, seems unimpeachable. (A "better interpretation of this factor is that it is concerned with whether the defendant could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litigation,* at 240.) "The proponents of the settlement bear the burden of proving that these factors weigh in favor of approval," *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* at 785; the burden this settlement's advocates must carry is heavy.

### III. The Unnamed Class Members Receive No Compensation At All, Which Itself Provides Multiple Reasons to Reject the Settlement.

Of course, the *Girsh* tests are not dispositive. As *Girsh* itself notes, the nine considerations are only "some of the factors." 521 F.2d at 156. As the Third Circuit emphasized in *In re AT&T Corp.*, 455 F.3d 160, 164-65 (3d Cir. 2006), the nine factors suggested in *Girsh* for the evaluation of a class action settlement do not constitute an exhaustive list; in fact, there are numerous "other potentially relevant and appropriate factors" that may play a role in that evaluation. *Id.* at 165. These factors include the reasonableness of attorney fees, *id.*; those fees in this case could consume more than 97.5% of the entire cost of the settlement. (The remainder consists of payment to the one named plaintiff, who has not been

deposed.) There is "an especially acute need for close judicial scrutiny of fee arrangements in class action settlements." *Id.* at 166.

Plaintiffs' initial complaint specified damages in excess of $5 million and argued that class members had been harmed and thus deserved compensation in at least three different respects. Ercoline Class Action Complaint, pp. 3, 9-12. The proposed settlement agreement provides no relief whatsoever to the plaintiffs, with the exception of the injunction that affects the plaintiffs only inasmuch as it affects the entire public. Indeed, the proposed settlement agreement contemplates that over 97.5% of the resources that defendant will disgorge may go to attorneys' fees. Should this settlement be approved, the attorneys who claimed to represent and sought to bind an entire class will have succeeded in recovering cash only for themselves and one named plaintiff.

The forward-looking injunctive relief afforded to the putatively represented plaintiffs is of no benefit to them. The change in labeling, to the extent that it benefits anyone, only benefits future Unilever customers—who are certainly not identical with the class. "It is future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 U.S. 646, 654 (7th Cir. 2006). This injunction on future actions compensates for no past harm; at most, it is only an agreement to avoid

compounding and repeating the alleged injury. But "[t]he fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Id.* This proposed settlement flunks that test: although Rule 23(e)(2) requires a "fair, reasonable, and adequate" settlement, this proposal provides nothing to the putatively represented plaintiffs at all. Class counsel represent clients; counsel's fiduciary duty is to the class; counsel's duty under Rule 23(a)(4) is to protect the interests of the class. "In awarding attorneys' fees … What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *In re Prudential Ins. Co. of Am.,* 148 F.3d 283, 342 (3d Cir. 1998), *accord In re AT&T Corp.,* 455 F.3d at 164-65 (3d Cir. 2006). *See also, e.g., Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) (appellate court reversed district court's approval of injunction-only class action settlement because it was an abuse of discretion; "the class members received nothing; the named plaintiff and class counsel received compensation for his injury and their time; and the defendant escaped paying any punitive or almost any compensatory damages.").

In short, the proposed settlement is structurally almost identical to other settlements that the Seventh and Ninth Circuits have already rejected under Rule 23(e). Compare it with *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952

(7th Cir. 2006) ("untenable"); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877, 882 (7th Cir. 2000) ("substantively troubling"), and *Molski,* 318 F.3d at 956 ("unfair, inadequate, and unreasonable"):

|  | *Murray* | *Crawford* | *Molski* | *Ercoline* |
|---|---|---|---|---|
| **Unnamed class recovery** | Up to $947,000 | $0 | $0 | $0 |
| **Rep. plaintiff payments** | $3,000 | $2,000 | $5,000 | $5,000 |
| **Attorney fees** | ~$400,000 | $78,000 | $50,000 | Up to $200,000 |
| **Approved?** | Rejected on appeal; remanded. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | ? |

The proposed settlement is structured almost identically to class action agreements struck down in other circuits because of the court's concerns that those settlements ignore the interests of class members. The disproportionate settlement figures "demonstrate that the terms should not have been approved" and that the attorney appears to have "sold out the class." *Crawford,* 201 F.3d at 882. This kind of disproportion—a four-figure award to the named plaintiff, as compared to zero for everyone else allegedly harmed—serves "as proof that the class device had been used to obtain leverage for one person's benefit." *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952 (7th Cir. 2006).

The precedents demonstrate not only that this court should reject the settlement, but also that approval of the settlement would constitute an abuse of discretion. *Murray* contains perhaps the clearest explanation of why a settlement agreement of this type is untenable as a matter of law. In *Murray*, the parties presented a proposed class action settlement to the district court. The district court decided not to consider the settlement and rejected class certification. 434 F.3d at 951. On appeal, the Seventh Circuit held that the district court's reasoning for rejecting class certification was erroneous. The court remanded: furthermore, it instructed the district court to newly evaluate the Rule 23(a)(4) adequacy of class counsel because of the possibility that counsel had proposed a self-serving and "untenable" agreement that "fail[ed] to afford effectual relief" to unrepresented class members. *Id.* at 951-52.

Note that *Murray* is entirely consistent with this circuit's multi-factor test in *Girsh. Murray* is simply a legal application of the relevant factors (such as the disproportionate ratio between attorneys' fees and class representation) in conjunction with one another. Where a settlement provides no relief (or a miniscule percentage of sought-after relief) to class members, it is "untenable" because it means either that the settlement is not "reasonable" because the case is meritless; alternatively, if the case has merit, it means that the settlement is not

"adequate" because the plaintiffs' counsel has sold out the class. *Murray*, 434 F.3d at 951-52. This dilemma, created by the starkly disproportionate structure of the settlement agreement, underscores that there are only two possible scenarios that can produce a settlement this bad—and both scenarios are ones where a district court must, as a matter of law under Rule 23(e), reject a class action settlement.

To put it another way, the logic of *Murray* is that the settlement agreement demonstrates that one of two unpalatable alternatives must be true. The first alternative is that if this is a meritorious class action, class counsel has breached its duty under Rule 23(a)(4) to "fairly and adequately protect the interests of the class," given that the settlement supplies no relief to them; the second alternative is that if this is a meritless class action, it would be an abuse of the court's equitable powers to approve a self-serving settlement that accomplishes nothing much except requiring Unilever to write some checks to *USA Today*, one named plaintiff, and class counsel—resulting in nothing much but higher prices for consumers.

## IV. The Settlement Creates Burdensome and Unnecessary Requirements That Will Hinder and Deter Legitimate Objectors.

Under Rule 23(e), "any class member may object" to a proposed settlement. The right to object is not a privilege that a settlement agreement should regulate or

obstruct. However, there are three respects in which this settlement agreement seems almost designed to make the process of legitimate objections inordinately difficult.

First, the form of the objection required by the settlement demands an extensive purchasing history on the part of the objector. The class comprises all those who bought Breyers or Unilever low-calorie ice cream in the United States on or after April 6, 2004. Settlement, at ¶ 2.25. However, the settlement agreement requires "the type, quantity and flavor of the product(s) purchased, the place of purchase and the approximate date of the purchase." Such specificity, requiring a recollection of the details involved in the purchase of ice cream in years past, is an unreasonable demand: an otherwise qualified objector may simply be unable to recall the entire context of a long-ago impulse buy of a luxury good. Those who want to object, but cannot recall in which supermarket they bought ice cream six years ago or the number of ounces printed on the ice cream container, should not be barred from exercising their rights. A simple statement to the effect that the objector purchased in the United States, after April 5, 2004, Breyers or Unilever ice cream that was either branded Smooth & Dreamy or otherwise represented itself as low-calorie should be sufficient; surely the settlement agreement's authors—who in that document warn potential objectors (perhaps in a

display of concern for objectors' interests) that they may, by objecting, become subject to deposition—are capable of discovering any additional relevant information by asking the objectors directly.

Second, and perhaps of greater concern, is the requirement that all objectors submit "a detailed list of any other objections to any class action settlements you submitted to any court, whether State, Federal, or otherwise, in the United States in the previous five (5) years, and if you never made such an objection an affirmative statement to that effect." In a now-vacated federal trial court opinion, the trial judge once noted that the plaintiff in that case had participated in multiple class action lawsuits; according to the court's opinion, this indicated that the plaintiff was "merely seeking the 'quick buck'" and was "not truly interested in vindicating any of the rights of the proposed class members." See *Murray,* 434 F.3d at 954. This judgment was vacated; as the appellate opinion noted: "The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders." *Id.*

If the settlement agreement required disclosure of past judicial sanctions (for, e.g., vexatious litigation or other abuse of the legal process), this requirement might be reasonable. But simply making objectors list all the instances when they

have been victimized sufficiently by inadequate class action settlements that they have decided to pursue legal remedies seems to serve no legitimate purpose; rather, this requirement seems unduly burdensome and impermissibly designed to deter objections—especially given the rather atypical, and repeated, warning that objectors may be required to undergo deposition. The settling parties are free to compile their own research dossiers on objectors who have had the temerity to object to other settlements in the past; as noted above, if the information that the settling parties desire is not contained in the objection, they are free to engage in discovery—the prospect of which they have so considerately and repeatedly cautioned potential objectors about. (In Frank's case, all of his objections are a matter of public record; they are detailed on the Center for Class Action Fairness's website.)

Finally, the settlement agreement's procedures for notice require objectors to use centuries-old technology while eschewing methods of communication that are faster, cheaper, and arguably more reliable. In 2010, it is routine for settlement agreements, in addition to appearing in newspaper advertisements, to be placed on the Internet for public view. See, e.g., Settlement Agreement, at ¶ 9.3. However, the settlement requires objectors to send two separate complaints to class counsel and defendant's counsel by U.S. Mail. Either or both a dedicated email address

and a dedicated website comment form should be available to objectors; in a world where people regularly perform complex financial transactions over the Internet, sending an electronic objection should be an available option. For objections, "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation."  Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727, 766 n. 251 (2008). This would ameliorate a related problem—namely that when class members have little at stake, as in consumer fraud class actions, the rate of response is famously low.  Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004).

Furthermore, the ercolinesettlement.com website (last accessed on December 8, 2010) that contains the settlement agreement also instructs objectors—reasonably enough—to mail their objections to the court. However, the Court's Walnut Street mailing address is nowhere on the website.

In short, numerous aspects of the agreement appear to be designed to deter or unreasonably burden legitimate objections to the settlement. It has not deterred this particular objection, but because of the unreasonable burdens to objecting, the

Court should be hesitant in according any weight to the failure of other class members to object. Silence is simply *not* consent:

> There may be many reasons why class members in this case didn't register their concerns about the settlement: lack of interest, time, information, etc. Like the Third Circuit in the *General Motors* case, the Court is unwilling to automatically equate class silence with a showing of "overwhelming" support for the settlement. Therefore, the fact that statistically few people bothered to opt-out or file an objection ultimately counts little in the Court's overall fairness analysis.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001), citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 789 (3d Cir. 1995). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

"[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812, citing *In re Corrugated Container*

*Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir.1981); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . . '"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement). *See also In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously").

The judge must act as a guardian for *all* class members—whether or not they have jumped through the hoops of formally objecting. "[T]he absence or

silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971).

## V.    The Settlement, As Such, Harms Class Members' Interests.

When plaintiffs bring litigation, they necessarily force defendants to protect their own interests in court. Objectors benefit, as the general public does, from consumer choice and lower prices. This proposed settlement raises prices on class members—given that defendants will inevitably raise prices on the goods they sell in order to cover litigation costs—without corresponding benefits to class members. The welfare of the public would be improved if courts rejected such settlements and deterred litigation that, by and large, only benefits attorneys.

As noted above, one reading of this controversy is that it is low-value litigation, consisting of meritless claims with little chance of success. If this is the case, the settlement agreement invites rejection, since it accomplishes little besides the transfer of funds from defendants to class counsel. However, if the claims have merit, the compensation needs to go to the class, not simply one named plaintiff; the proposed settlement agreement does nothing to address the legitimate claims of plaintiffs (except to extinguish them). Although the law looks favorably upon judicial approval of class action settlements in general, this presumption cannot

---

extend to settlements that fall into either of the categories prohibited by *Murray, supra*—the court should not approve settlements for meritless claims, nor should it approve settlements with no compensation at all for those who have allegedly been harmed. In either case, the only significant effects of the settlement are to shift resources from defendant to class counsel: this shift will ultimately raise costs on consumers without any corresponding social benefit. The phenomenon of settlement costs without settlement benefits provides another reason for the court to reject this settlement.

## CONCLUSION

This proposed settlement will distribute up to $5,000 to one named plaintiff, up to $25,000 for costs of notice, up to $200,000 to attorneys, and zero to the class whose interests those attorneys have volunteered to protect. As such, it is inconsistent with settled law, impermissible under the Federal Rules of Civil Procedure, and inappropriate with respect to class counsel's duty to class clients. One rough indicator of the reasonableness of a settlement agreement is the ratio of plaintiff compensation to attorneys' fees; in this case, with the exception of the payment to the named plaintiff, the ratio of compensation to fees is infinitely large. Like an elephant in a living room, the attorneys' fees tower over all other aspects of the settlement—a settlement that not only crowds out all previously asserted

interests of the class but also creates artificial obstacles for those who wish to object to it. This breach of duty by class counsel and named plaintiff cannot be reconciled with the requirement to "fairly and adequately protect the interests of the class." Under Third Circuit precedent, the settlement fails under Rule 23(a)(4) because it puts the interests of the attorneys ahead of the class members. Consumers would be benefited if courts rejected such settlements, which raise costs on defendants (and ultimately load higher prices onto consumers) without concomitant increases in the public's welfare.

To safeguard the interests of objectors, consumers, and unrepresented class members, this Court should carry out its fiduciary responsibilities by rejecting the proposed settlement.

Dated: December 10, 2010

Respectfully submitted,

/s/ *Theodore H. Frank*
Theodore H. Frank
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW
No. 23-6
Washington, DC 20036
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

*In pro per*

## PROOF OF SERVICE

I declare that:

I am employed in the state of Arkansas. I am over the age of 18 years and not party to the within action; my office address is 55 Fontenay Circle, Little Rock, Arkansas 72223.

On December 10, 2010, I served the attached:

## OBJECTION AND NOTICE OF INTENT TO APPEAR OF THEODORE H. FRANK

  X   By U.S. Mail to the addressee(s) designated.

WOLF POPPER, LLP
845 Third Avenue
New York, New York 10022

Ronald J. Levine
Herrick, Feinstein LLP
210 Carnegie Center
Princeton, NJ 08540

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2010.


*/s/ Daniel Greenberg*
Daniel Greenberg