PETER S. PEARLMAN, ESQ.
COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
201-845-9600
201-845-9423 (facsimile)

WOLF POPPER, LLP
845 Third Avenue
New York, New York 10022

CLARK, HUNT, AHERN & EMBRY
55 Cambridge Parkway
Cambridge, MA 02142


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MATHEW ERCOLINE, on behalf of himself and  : : Civil Action No.: 2:10-cv-01747-SRC-
on behalf of all others similarly situated,  :  MAS
  :
               Plaintiff,  :
  :
          v.  :
  :
UNILEVER UNITED STATES, INC.  :
  :
         Defendant.  :
  :
  :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO THE TWO
OBJECTIONS TO APPROVAL OF PROPOSED SETTLEMENT AND AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.  PRELIMINARY STATEMENT ................................................................ 1

II.  THE GIRSH FACTORS CONTINUE TO SUPPORT THE SETTLEMENT ................. 1

  A.  The Reaction of the Class is Virtually Unanimous In Favor of the Proposed Settlement ............................................................................ 2

  B.  The Risk of Establishing Liability Favors Approval ............................... 3

  C.  The Risk of Establishing Damages Favors Approval ............................. 5

    1.  There are significant obstacles to recovering monetary damages for the Class ................................................................ 5

    2.  The injunctive relief in the Settlement Agreement provides real benefits to the Class .......................................................... 6

  D.  The Reasonableness of the Settlement In Light of Possible Recovery Favors Settlement ............................................................................ 9

III.  THE SETTLEMENT PROCEDURES AND NOTICE ARE FAIR AND APPROPRIATE ................................................................................. 10

  A.  The Concerns Raised In *Mercury Interactive* Present No Problem Here ............ 10

  B.  Class Notice Was Proper And Sufficient .......................................... 11

IV.  PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS, AND A CASE CONTRIBUTION AWARD, REMAINS REASONABLE ............................... 13

V.  FRANK AND SABOTA ARE NOT PROPER OBJECTORS ......................... 14

VI.  CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)........................................................................2, 6, 11

*Crawford v. Equifax Payment Servs., Inc.*,
  201 F.3d 877 (7th Cir. 2000) .............................................................................8

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ..................................................................9, 12

*First State Orthopaedics v. Concentra, Inc.*,
  534 F. Supp. 2d 500 (E.D. Pa. 2007) ..................................................................7

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................................2

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)...............................................................................2

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)...............................................................................2

*Laufer v. United States Life Insur. Co.*,
  896 A.2d 1101 (N.J. Super. Ct. App. Div. 2006).................................................7

*Lee v. Carter-Reed Co.*,
  4 A.3d 561 (N.J. 2010)...............................................................................6, 7, 8

*In re LG/Zenith Rear Projection Television Class Action Litig.*,
  No. 06-5609 (JLL), 2009 WL 455513  (D.N.J. Feb. 18, 2009) ........................11

*Mace v. VanRu Credit Corporation*,
  109 F.3d 338 (7th Cir. 1997) .............................................................................6

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) .............................................................................7

*Medley v. Johnson & Johnson Consumer Co.*,
  No. 10-cv-02291 (DMC)(JAD), 2011 U.S. Dist. LEXIS 4627 (D.N.J. Jan. 18, 2011).......6

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ...........................................................................10

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................7

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) .............................................................8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................11

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) .....................................................8, 9, 13

*Sala v. Nat'l R.R. Passenger Corp.*,
  721 F. Supp. 80 (E.D. Pa. 1989) .......................................................2

*Smith v. Tower Loan of Miss., Inc.*,
  216 F.R.D. 338 (S.D. Miss. 2003) .....................................................8

*Solo v. Bed Bath & Beyond, Inc.*,
  No. 06-1908 (SRC), 2007 WL 1237825 (D.N.J. Apr. 26, 2007)........6

*Spann v. Colonial Village, Inc.*,
  899 F.2d 24 (D.C. Cir. 1990) ............................................................14

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990).............................................................2

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ............................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .......................................................12

*Walker v. City of Lakewood*,
  272 F.3d 1114 (9th Cir. 2001) ..........................................................14

*In re Warafin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................9, 11

## OTHER AUTHORITIES

288 *Manual for Complex Litigation*, § 21.311 (4th ed. 2004)......................................12

## STATUTES AND RULES

21 C.F.R. § 101.13 .................................................................................................3, 4, 5

21 C.F.R. § 101.56 ....................................................................................................4

28 U.S.C. § 1712(b)(1) .........................................................................................7, 8

Fed. R. Civ. P. 23(c)(2) .............................................................................................12

## I.     PRELIMINARY STATEMENT

Pursuant to the Preliminary Order, on November 18, 2011, Plaintiff filed his Notice of

Motion for Final Approval of Class Action Settlement (the "Settlement Motion") (Docket No.

28) supported by, among other things his Memorandum of Law in Support of Final Approval of

Proposed Settlement and Award of Attorneys' Fees and Expenses (the "Final Settlement

Memo") (Doc. No. 28-1).[1]  After the publication of the Class Notice in <u>USA Today</u> and on a

dedicated website, and notices to all states and the federal Government, as well as the even

broader attention given to this litigation and the Settlement Agreement in traditional media and

online, this Court has received only two objections to the settlement and fee award.  The clear

conclusion is that the Class overwhelmingly approves of the Settlement Agreement.  This is not

surprising as the changes to the label required by the Settlement Agreement provide real benefit,

by clarifying that the "1/3 fewer calories" claim on Breyers Smooth & Dreamy Ice Cream label

does not refer to the comparable Breyers Regular Ice Cream flavor.  Notwithstanding this

benefit, objectors Theodore Frank ("Frank") and Cassandra Lynne Sobota ("Sobota") have

challenged the terms and reasonableness of the Settlement Agreement as well as the form of the

court-approved Class Notice and the requirements for filing objections under the Settlement

Agreement.  However, the Settlement is fair and reasonable and the requirements established in

the Preliminary Order are more than sufficient to provide adequate notice, and the requirements

for properly filing an objection are easily met.

## II.     THE GIRSH FACTORS CONTINUE TO SUPPORT THE SETTLEMENT

As Plaintiff explained in the Final Settlement Memorandum, the Court should find that

the Settlement Agreement is fair, reasonable, and adequate under the factors established in *Girsh*

---

[1]         Unless otherwise indicated, capitalized terms have the same definitions as provided in the Final Settlement Memo.

*v. Jepson*, 521 F.2d 153 (3d Cir. 1975).  The objections raised by Frank and Sobota do not alter this conclusion.

Neither Frank nor Sobota seriously challenge the fact that further litigation of this matter would be complex, expensive, and lengthy.  Nor do they outline any additional factual issues that would have benefitted from extensive discovery, which confirms that the Settlement Agreement has come at an appropriate point in the litigation.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993) (stage of proceedings factor "cuts both ways" because settlement late in the proceedings "means only the costs of trial and appeal are saved"); s*ee also Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) (analysis of advertisement itself was sufficient to determine whether it was deceptive).  While Plaintiff continues to believe that the claims are well-suited for treatment on a Class-wide basis, Defendant would likely have strenuously opposed class certification.

A.     **The Reaction of the Class is Virtually Unanimous In Favor of the Proposed Settlement**

Despite Frank's efforts to minimize the overwhelmingly positive response of the Class, it is "perhaps the most significant factor to be weighed in considering its adequacy."  *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989).  In the Third Circuit, "[c]ourts have generally assumed that 'silence constitutes tacit consent to the agreement.'"  *In re GMC Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995), *quoting Bell Atl.*, 2 F.3d at 1313, n. 15.  In this action, only two people out of tens of thousands of Smooth & Dreamy Ice Cream consumers have filed objections—one of whom is a serial objector.  *See Bell Atl.*, 2 F.3d at 1313-14 (30 objectors out of 1.1 million is "infinitesimal" and does not favor rejecting the settlement); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement").

**B.      The Risk of Establishing Liability Favors Approval**

While Frank pays little attention to the merits, Sobota argues that Plaintiff has conceded a

"strong case of false advertising" for little to no value.  However, Sobota misapplies the relevant

law and fails to consider the strength of Defendant's potential arguments.

***First***, Sobota claims that Defendant has violated the FDA regulations related to

nutritional value claims because it has improperly used a "market basket" as a "reference food"

to establish its "1/3 fewer calories" claim.  However, it is by no means clear that the label did not

comply with these requirements.  According to the regulation regarding "relative claims,"

statements that a food has "fewer" calories (as opposed to "light" or "reduced" claims) can rely

on a comparison to both "dissimilar food" and "similar food":

> A food may bear a statement that compares the level of a nutrient in the food with the
> level of a nutrient in a reference food.  These statements shall be known as "relative
> claims" and include "light," "reduced," "less" (or "fewer"), and "more" claims.
>
> (1) To bear a relative claim about the level of a nutrient, the amount of that nutrient in
> the food must be compared to an amount of nutrient in an appropriate reference food
> as specified below.
>
>> (i)       (A) For "less" (or "fewer") and "more" claims, ***the reference food may be
>> a dissimilar food within a product category that can generally be substituted for
>> one another in the diet*** (e.g., potato chips as reference for pretzels, orange juice
>> as a reference for vitamin C tablets) ***or a similar food*** (e.g., potato chips as
>> reference for potato chips, one brand of multivitamin as reference for another
>> brand of multivitamin).
>>
>> (B) For "light," "reduced," "added," "extra," "plus," "fortified," and "enriched"
>> claims, the reference food shall be a similar food (e.g., potato chips as a reference
>> for potato chips, one brand of multivitamin for another brand of multivitamin),

21 C.F.R. § 101.13(j)(1) (emphasis added).  The regulation also allows that the reference food

for less/fewer claims can be representative of a broad base of foods (including a market basket)

or the manufacturer's own product:

>> (ii)      (A) For "light" claims, the reference food shall be representative of the
>> type of food that includes the product that bears the claim.  ***The nutrient value for
>> the reference food shall be representative of a broad base of foods of that type***;
>> e.g., a value in a representative, valid data base; an average value determined

from the top three national (or regional) brands, *a market basket norm*; or, where its nutrient value is representative of the food type, a market leader.  Firms using such a reference nutrient value as a basis for a claim, are required to provide specific information upon which the nutrient value was derived, on request, to consumers and appropriate regulatory officials.

(B) *For relative claims other than "light," including "less" and "more" claims, the reference food may be the same as that provided for "light"* in paragraph (j)(1)(ii)(A) of this section, *or it may be the manufacturer's regular product*, or that of another manufacturer, that has been offered for sale to the public on a regular basis for a substantial period of time in the same geographic area by the same business entity or by one entitled to use its trade name.  The nutrient values used to determine the claim when comparing a single manufacturer's product to the labeled product shall be either the values declared in nutrition labeling or the actual nutrient values, provided that the resulting label is internally consistent to (i.e., that the values stated in the nutrition information, the nutrient values in the accompanying information and the declaration of the percentage of nutrient by which the food has been modified are consistent and will not cause consumer confusion when compared), and that the actual modification is at least equal to the percentage specified in the definition of the claim.

*Id.* (emphasis added).  It is not clearly a violation of the FDA's regulations to use either a market basket or Breyers Regular Ice Cream as a reference food for the relative claims of Smooth & Dreamy Ice Cream.  However, the central concern in this litigation is that consumers were misled into believing that the reference food was a single product, namely the similar Smooth & Dreamy Ice Cream flavor.  The Settlement Agreement seeks to remedy this precise problem by forcing Defendant to clarify, on the label, that it is actually comparing the Smooth & Dreamy Ice Cream to "a range of full fat ice cream flavors."

Sobota also claims that the labels separately violate 21 C.F.R. § 101.13(j) by misleadingly using the term "light" since the Smooth & Dreamy Ice Creams do not have 1/3 fewer calories than Breyers Regular Ice Creams.  However, a separate section—21 C.F.R. § 101.56, "Nutrition content claims for 'light' or 'lite'"—governs the term "light" and allows it to be used when:  a) the food derives fewer than 50 percent of its calories from fat; and b) either the calories are reduced by 1/3 *or* its fat content is reduced by 50% from the reference food.  21 C.F.R. § 101.56(b)(2).  Even assuming that the reference food is only the Regular Ice Cream

product, the labels for the Smooth & Dreamy Ice Creams appear to satisfy this standard.  For

example, the label for Butter Pecan flavored Smooth & Dreamy Ice Cream (a copy of which was

attached as Exhibit A to the Declaration of Sheila Wenke in Support of Defendant's Motion to

Dismiss (Document 13-2)) shows that 50 out of 130 calories are from fat (which is only 38%)

and there are five grams of fat per serving.  In comparison, the Butter Pecan flavor of Breyers

Regular Ice Cream contains ten grams of fat.  Butter Pecan, Breyers.com,

http://www.breyers.com/products/All-Natural/Butter-Pecan.aspx (last visited Mar. 4, 2011).

Sobota's allegations would have little chance of success.

*Second*, Sobota ignores the arguments raised by Defendant in the motion to dismiss that

the FDA's regulations preempt any private right of action on behalf of consumers.  While

Plaintiff believes that compliance with some FDA regulations does not prevent a claim of

misleading consumers, it is by no means certain that the Court would agree.[2]

    **C.**    <u>**The Risk of Establishing Damages Favors Approval**</u>

        1.    **There are significant obstacles to recovering monetary damages for the Class**

As Plaintiff explained in the Final Settlement Memorandum, even if Plaintiff were to

successfully establish Defendant's liability, Plaintiff still would have met substantial challenges

in proving an ascertainable loss on a class wide basis under the NJCFA or proving class wide

damages under the claims of express warranty or unjust enrichment.  Class wide damages would

have been aggressively contested and difficult to prove, especially considering that both Breyers

Regular Ice Cream and Smooth & Dreamy Ice Creams are sold by Unilever to retailers at the

---

[2]      Sobota also claims that the Settlement Agreement would release potential claims in an action before Judge Walls challenging "all natural" statements on the label, *Catanese v. Unilever*, Case No. 2:10-cv-05755-WHW-CCC (D.N.J.), for which a motion to dismiss is currently pending. There is another action pending in the Northern District of California, *Thurston v. Conopco, Inc.*, Case No. CV 10-04937 (N.D. Cal.), in which the same "all natural" claims are at issue.  Defendant entered into a Stipulation in that action that it would not argue at some future date that the Ercoline Settlement released the "all natural" claims

same price, so consumers were not paying a premium for the misleadingly-labeled ice cream.

Moreover, this Court has questioned whether the purchase price of the ice cream could be an

appropriate recoverable loss, even if the products were sold at different prices.  *Solo v. Bed Bath*

*& Beyond, Inc.*, No. 06-1908 (SRC), 2007 WL 1237825 (D.N.J. Apr. 26, 2007); *see also Medley*

*v. Johnson & Johnson Consumer Cos.*, No. 10-cv-02291 (DMC)(JAD), 2011 U.S. Dist. LEXIS

4627, at *5-6 (D.N.J. Jan. 18, 2011) (no injury in fact where plaintiffs received benefit of

bargain).

In contrast, Sobota argues that Plaintiff could have established damages of the full

purchase price because "light" ice cream is a "credence" good (*i.e.*, it contains attributes that

consumers cannot evaluate even in use) under *Lee v. Carter-Reed Co.*, 4 A.3d 561 (N.J. 2010).

However, the facts of *Lee* are easily distinguishable.  In *Lee*, the consumers received none of the

promised benefits of the drug that they purchased.  203 N.J. 496.  The product at issue here is not

a vitamin pill, the characteristics of which cannot possibly be known to the average consumer.

Rather, substantially all of the characteristics of ice cream are known to and can be ascertained

by the average consumer.  Further, Unilever contends that the Plaintiff received the full value of

their purchase, and the "credence" good theory will have little application.  By contrast, in *Lee*,

the consumers received none of the benefits of the drug that they purchased.

> 2.    **The injunctive relief in the Settlement Agreement provides real benefits to the Class**

As explained in the Final Settlement Memorandum, the Settlement Agreement provides

forward-looking relief without a monetary payment to the Class.  As such, courts have not

hesitated to approve settlements that conferred little to no monetary benefit on the class.  *See,*

*e.g.*, *Mace v. VanRu Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *Bell Atl.*, 2 F.3d at 1311

(rejecting objector's "sinister" allegations of collusion and holding nonmonetary benefits may

support a settlement despite the difficulties they pose to measurement where the possibility of success is uncertain); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 507 (E.D. Pa. 2007) (in class action alleging damages in excess of $5 million, settlement consisting entirely of prospective injunctive relief, with no monetary payment to the class, was fair, reasonable and adequate); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (nonmonetary relief is adequate settlement relief); *C.f. Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  Furthermore, the Class Action Fairness Act recognizes that settlements for injunctive relief provide a benefit to the class for which fees may be awarded.  *See* 28 U.S.C. § 1712(b)(1) (where fee award based on equitable relief, award to be based on "the amount of time class counsel reasonably expended working on the action"); *id.* at § 1712(b)(2) .  The entitlement to equitable relief is well recognized under the NJCFA.  *Lee*, 4 A.3d at 576;  *Laufer v. United States Life Ins. Co.*, 896 A.2d 1101, 1109 (N.J. Super. Ct. App. Div. 2006).

In spite of the weight of decisions, Frank contends that the settlement should not be approved because there is no payment or monetary benefit directed to the Class members, and it "ignores" the interests of the Class.  Frank also claims that any benefit from the injunctive relief is fictitious because (as with almost any injunctive relief) it applies only to future customers and not the prior purchasers.

However, each of the cases relied on by Frank is easily distinguished.  In *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006), the plaintiffs were overcharged by $75 million through defendants' systematic policy of overcharging for packages that were improperly marked.  However, both Breyers Regular Ice Cream and Smooth & Dreamy Ice Creams are sold by Unilever to retailers at the same price, so consumers were not paying a premium for the misleadingly-labeled ice cream.  Furthermore, in *Synfuel*, the Seventh

Circuit remanded the case to the District Court for further consideration of the proposed settlement and whether the class members received any benefit from the free shipping on future purchases.  *Id.*  The District Court then later approved the settlement on the same terms because, according to the uncontested submission by plaintiffs in that case, the Seventh Circuit overlooked uncontroverted evidence that 96%-98% of Class members were repeat customers and would benefit from the injunctive relief and shipping labels provided by the settlement.  *Synfuel*, 02-cv-324 (S.D. Ill. Aug. 16, 2007) [Docket No. 160]; *Synfuel*, 02-cv-324 (S.D. Ill. Mar. 23, 2007) [Docket No. 154] (attached as Exhibits A and B to the Declaration of Peter S. Pearlman ("Pearlman Dec."))  In fact, *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003),[3] *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), and *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000), were overturned in large part because the settlements failed to award class members reasonable compensation for claims with statutory minimum damages. Here, there are no such statutory minimum provisions.[4]

By arguing that the prior purchasers of Breyers Smooth & Dreamy Ice Cream will not benefit from the forward-looking relief of the Settlement Agreement, Frank ignores both the brand-loyalty of consumers in general and his own repeated purchases of Breyers ice cream. *See, e.g.*, *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 365-66 (S.D. Miss. 2003) aff'd sub nom *Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004) ("[B]ut [because] the class representatives have argued ad nauseam that because most of them are repeat customers, these requirements of the lender constitute the gravamen of the relief which they have sought from the

---

[3]     Overruled on other grounds by *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. Cal. 2010).
[4]     Moreover, *Molski* and *Crawford* predate CAFA and are not controlling on whether the settlement of a class action brought under CAFA complies with Rule 23(e).  Nor does *Crawford*'s justification for overturning the class settlement in that case—because the settlement precluded class members from opting out despite that the case (brought under the Fair Debt Collection Practices Act) did not meet the requirements for a "no opt out class" under Rules 23(b)(1) or (2)—apply here.  Unlike in *Crawford*, certification of a Rule 23(b)(2) class is appropriate, and, in any event, the settlement specifically allows class members to opt out.  *See* Settlement Agreement section 10.1.

beginning."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 315 (W.D. Tex. 2007) (approving class settlement and noting, in response to objection that injunctive relief did not benefit former policyholders, that "all class members have the opportunity to benefit from the injunctive relief . . . . Both current and former policyholders have the opportunity at renewal of their policies to either continue with or return to Allstate.  If a policyholder returns to Allstate, he or she will have the benefit of the [settlement's injunctive relief.").

Finally, Sobota also objects that "the case was not brought as a Rule 23(b)(2) injunction class," (Sobota Obj. at 4).  But that is absolutely untrue.  See paragraph 14 of the Complaint:

> Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Defendant's advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class.

The Complaint also asked for "declaratory and permanent injunctive relief" from Defendant's unlawful practices.  *Id.* at p. 13.

**D.    The Reasonableness of the Settlement In Light of Possible Recovery Favors Settlement**

The final *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Warafin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  Frank's objection makes no attempt to evaluate these factors; instead, he claims the settlement should be rejected as inadequate "if" the claims are meritless and also "if" the claims have merit (Frank Obj. at p. 22), which reveals his animus towards class actions generally and should be rejected for that reason alone.  *See Murray*, 434 F.3d at 951 (rejecting arguments against class certification that "evince hostility to all class litigation" which, if adopted, would render consumer class actions impossible).  Under the correct standard, these factors favor settlement because Plaintiff achieved the maximum benefit that he was likely to achieve under the circumstances.

Frank's contention that the proposed settlement is "structurally almost identical to other settlements that the Seventh and Ninth Circuits have already rejected" is false, as explained above, and ignores that courts do not evaluate settlements for "structure," i.e., whether the class receives money, but rather based on whether the settlement is fair and reasonable under the nine *Girsh* factors. Consideration of those factors supports approval.

## III. THE SETTLEMENT PROCEDURES AND NOTICE ARE FAIR AND APPROPRIATE

Sobota and Frank also object to the timing of Plaintiff's motion for attorney's fees and the procedures for Class notice. These contentions are without merit.

### A. The Concerns Raised In *Mercury Interactive* Present No Problem Here

Plaintiff's Settlement Motion, filed November 18, 2010, includes counsels' application for attorneys' fees and expenses, as well as an application for a case contribution award for Plaintiff. As set forth in the Preliminary Order, the deadline for objections to the Settlement Agreement was December 11, 2010, roughly three weeks later, allowing plenty of time for potential objectors (including Sobota's counsel, who had filed a motion for reconsideration with the Court in October) to review them and register specific objections.

Sobota's claim that this schedule does not comply with *In re Mercury Interactive Corp. Securities Litigation* is wrong. In *Mercury Interactive*, the Ninth Circuit found that the District Court abused its discretion by setting the objection deadline prior to the date when plaintiffs filed their fee motion. 618 F.3d 988 (9th Cir. 2010). Nothing in *Mercury Interactive* even suggests, much less requires, the parties distribute the fee motion to class members as Sobota claims. Rather, this is simply a fallback position adopted by Sobota after Plaintiff demonstrated in his opposition to Sobota's motion to reconsider this Court's order granting preliminary approval that the objector's earlier position on *Mercury Interactive* was unsustainable because the fee application was to be filed before the objections were due. *See* Doc. No. 27 at 4.

10

**B.**   <u>**Class Notice Was Proper And Sufficient**</u>

Both Frank and Sobota also object to the form of the court-approved Notice and the requirements for registering an objection.  The standard for notice is whether it comports with due process.  *Bell Atl.*, 2 F.3d 1304 ("To satisfy due process, the notice 'must be sufficiently informative and give sufficient opportunity for response.'") (citations omitted).  Publication in a national newspaper (such as <u>USA Today</u>, the country's largest newspaper) is reasonably calculated to inform class members of the settlement given that their addresses are not known. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning.  Thus it has been recognized that, in the case of persons missing or ***unknown***, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.") (citations omitted) (emphasis added); *In re LG/Zenith Rear Projection Television Class Action Litig.*, No. 06-5609 (JLL), 2009 WL 455513, at *2 (D.N.J. Feb. 18, 2009) (single publication has been found to meet the standards of Rule 23(c)(2)).

The settlement agreement also provided for a dedicated website at http://www.ercolinesettlement.com, which allows class members to review and access information about the settlement and submit questions online.  Class members may also call the toll-free number established by the parties to receive telephone inquiries.[5]  The <u>USA Today</u> publication and the dedicated website were more than sufficient to inform absent class members of the settlement when the individual Class members were unidentifiable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 536-37 (notice by publication and establishment of call

---

[5]       Indeed, a Google search for the phrase "Breyers settlement" also produces Frank's website, where, on October 14, 2010, Frank posted a copy of the settlement agreement.

center and website with information and downloadable documents provided sufficient notice to consumers whose identities were unknown); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107-08 (S.D.N.Y. 2007) ("When class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."); *DeHoyos*, 240 F.R.D. at 296 ("While sending notice by mail is preferred when all or most of the class members can be identified, where class members cannot be identified, as here, notice by publication is sufficient."); 288 *Manual for Complex Litigation* § 21.311 (4th ed. 2004) ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort."); Fed. R. Civ. P. 23(c)(2) (requires 23(b)(3) class members receive "the best notice practicable under the circumstances").

The court-approved procedures for class members to respond to the settlement were hardly onerous.  Notably, Frank fails to cite a single case where the court found a settlement imposed undue burdens on class members.  Even if the US Postal Service is "centuries old," it is still a reliable and cost-effective way to transmit objections to the court and the parties.  A dedicated email address and website comment form would only raise costs which, according to Frank, would be passed on to consumers anyway.

Moreover, Frank cites no authority that requesting purchasing history information is improper.  To the contrary, as Frank acknowledges, under Rule 23 objectors must be members of the class to have standing to object.  The court-approved notice seeks nothing more than is required to establish membership in the class.  Requesting the type and quantity of product(s) purchased, the place of purchase and the approximate date of purchase is not unreasonable; indeed, Frank purportedly was able to recall this information for alleged purchases of Breyers ice

cream dating back to 2005.  Frank cites no authority that requesting prior objections is improper and is the best evidence that requesting such information does not deter serial objectors.

Frank's reliance on *Murray* is misleading, as that case did not hold or suggest that it was improper to request information concerning prior objections.  To the contrary, the Seventh Circuit in *Murray* cautioned against accepting positions that "evince hostility to all class litigation."  *Murray*, 434 F.3d at 951.  In evaluating objections, the court and the parties are entitled to evidence bearing on the issue of whether a particular objector is generally hostile to all class actions.

## IV.   PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS, AND A CASE CONTRIBUTION AWARD, REMAINS REASONABLE

As explained in the Final Settlement Memorandum, Plaintiff's application for attorneys' fees and expenses as well as a case contribution award are justified by the benefits to the Class afforded by the Settlement Agreement.  The "lodestar" approach also justifies the application for attorneys' fees and expenses, considering that it results in a ***negative*** multiplier, even without consideration of counsels' recent efforts to finalize the Settlement Agreement, respond to objectors, and attend the settlement hearing.

As discussed above, the Final Settlement Memorandum filed in November was supported by a full record.  Plaintiff's counsels' affidavits set forth the time spent on this matter and each attorney's billing rate, as well as the expenses incurred by each firm.  The affidavit of Plaintiff also supports his request for a case contribution award of $2,557.

The objectors had more than three weeks to review these detailed records and make any objections to the fee application.  However, Frank and Sobota do no more than make general allegations that the fees are unreasonable without any factual support.  The fact that they do not challenge any of the actions performed by counsel—such as legal and factual investigation of the

issues, preparation of the complaint, analysis of the motion to dismiss, negotiations with

Defendant, preparation of the Settlement Agreement, preparation of the motion for preliminary

approval of the Settlement, and preparation of the opposition to the motion to reconsider (see

Declaration of Lester L. Levy, ¶ 19)—suggests they cannot do so.  Frank has not even correctly

read the Final Settlement Memorandum and accompanying affidavits since he incorrectly states

that Plaintiff seeks a case contribution award of $5,000 when he only seeks an award of $2,557,

based on the time he was unable to spend in furtherance of his information technology consulting

business.

## V.   FRANK AND SABOTA ARE NOT PROPER OBJECTORS

Despite the objections to the requirements for objectors, it is far from clear that Sobota

and Frank can properly represent the interests of Class members.

Sobota lacks standing because she did not purchase any Breyers Smooth & Dreamy ice

cream products until October 19, 2010, the same day she filed her "motion to reconsider" the

court's preliminary approval of the settlement.  (Sobota Obj. at ¶ 2.)  In a carefully-worded

statement, perhaps intended to obscure her lack of standing, she states that she bought "numerous

containers of Breyers Smooth  & Dreamy Ice Cream at various stores in Illinois" on some

unspecified date and time period, and "last purchased" such ice cream on October 19th.  While

this purchase was technically within the class period with no end date, federal courts have long

frowned upon expenditures of funds solely to establish standing.  *See Spann v. Colonial Village,*

*Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the

injury necessary to maintain a suit from its expenditure of resources on that very suit.  Were the

rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would

present no real limitation."); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n3 (9th Cir. 2001)

(applying *Spann*).

While Frank states his prior purchasing history, it is evident that he is a serial objector who is an admitted anti-class action activist. *See* Thomas Frank, "Protecting Main Street from Lawsuit Abuse," Statement presented to the Senate Republican Conference, March 16, 2009, available at http://www.aei.org/docLib/Frank%20testimony.pdf  ("A conservative estimate of the direct and indirect costs of the tort system on the United States is between $600 billion and $900 billion a year.")  He has described his current organization, the Center for Class Action Fairness, as a "guerilla operation" dedicated almost exclusively to challenging class actions. *See* Kate Moser, "Class Action Avenger Discusses Coupon Crusades" Legal Pad (Sept. 23, 2009, 2:39 p.m.) http://legalpad.typepad.com/my_weblog/2009/09/class-action-avenger-discusses-coupon-crusades.html.

## VI.    CONCLUSION

For the reasons set forth in the Final Settlement Memorandum and above, the settlement here is fair, adequate and reasonable and satisfies all requirements for final approval. Additionally, the fees, expenses, and cash contribution award requested are justified given the results achieved and time expended in this complex litigation.  The objections raised by Frank and Sobota do not alter this analysis.  Accordingly, the Court should grant final approval of the settlement; approve the fees, expenses and cash contribution award requested; and enter judgment forthwith.

Dated: March 7, 2011                              **COHN LIFLAND PEARLMAN**
                                                  **HERRMANN & KNOPF LLP**

                                       By:     *s/Peter S. Pearlman*
                                               Peter S. Pearlman
                                               Park 80 Plaza West-One
                                               250 Pehle Avenue, Suite 401
                                               Saddle Brook, New Jersey 07663
                                               Tel:  (201) 845-9600
                                               psp@njlawfirm.com

**WOLF POPPER, LLP**
845 Third Avenue
New York, New York  10022

**CLARK, HUNT, AHERN & EMBRY**
55 Cambridge Parkway
Cambridge, MA  02142

*Attorneys for Plaintiff and the Class*