COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
PETER S. PEARLMAN, ESQ.
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
201-845-9600
201-845-9423 (facsimile)
psp@njlawfirm.com

WOLF POPPER, LLP
845 Third Avenue
New York, New York 10022

CLARK, HUNT, AHERN & EMBRY
55 Cambridge Parkway
Cambridge, MA  02142

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATHEW ERCOLINE, on behalf of himself and on behalf of all others similarly situated, | Civil Action No.:  2:10-cv-01747-SRC-MAS |
| Plaintiff, | |
| v. | |
| UNILEVER UNITED STATES, INC. | |
| Defendant. | |

**DECLARATION OF PETER S. PEARLMAN IN SUPPORT OF PLAINTIFFS'
MEMORANDUM OF LAW IN RESPONSE TO THE TWO OBJECTIONS TO
APPROVAL OF PROPOSED SETTLEMENT AND AN AWARD OF ATTORNEYS'
FEES and EXPENSES**

I, PETER S. PEARLMAN, declare as follows:

1.     I am a member of the firm of Cohn Lifland Pearlman Herrmann & Knopf LLP.  I am submitting this declaration in support of my firm's application for an award of attorneys' fees and expenses in connection with services rendered in the above-entitled action.

2.     This firm is counsel of record for plaintiff Matthew Ercoline.

3.     Annexed hereto as Exhibit A is a true and correct copy of Joint Motion for Final Approval of Class Action Settlement in *Synfuel Technologies, Inc. v. Airborne Express, Inc.*, Civ. Action No. 02-cv-324 (S.D. Ill. Aug. 16, 2007) [Docket No. 154].

4.     Annexed hereto as Exhibit B is a true and correct copy of the Final Judgment and Order Approving Settlement in *Synfuel Technologies, Inc. v. Airborne Express, Inc.,* Civ. Action No. 02-cv-324 (S.D. Ill. Aug. 16, 2007) [Docket No. 160].

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of March, 2011.

*s/ Peter S. Pearlman*

Peter S. Pearlman

# <u>EXHIBIT A</u>

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SYNFUEL TECHNOLOGIES, LLC, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 02-324-DRH |
| AIRBORNE EXPRESS, INC., | ) ) | CLASS ACTION |
| Defendant. | ) ) | |

### JOINT MOTION FOR FINAL
### APPROVAL OF CLASS ACTION SETTLEMENT

### I. INTRODUCTION

Plaintiff, Synfuel Technologies, LLC (the "Plaintiff" or "Synfuel"), and Defendant, Airborne Express, Inc. (the "Defendant" or "Airborne Express"), jointly move the Court to enter an order granting final approval to the settlement of this class action lawsuit (the "Settlement"). Although the Court previously granted final approval to the Settlement, the Seventh Circuit vacated that order and remanded for further consideration. This Motion addresses all the specific issues raised by the Seventh Circuit's opinion. As demonstrated below, the pleadings, the evidentiary record, and the controlling precedent of this jurisdiction plainly demonstrate that the Settlement is exceptionally fair, adequate, and reasonable. Therefore the Settlement should be finally approved.

## II. BACKGROUND[1]

Airborne Express[2] is a common carrier in the business of delivering shipped packages to customers throughout the United States.  Synfuel filed this class action on April 11, 2002, based on Airborne Express' alleged failure to adhere to the rates for the type of delivery service specified on its packages for delivery.  Plaintiff alleged that Airborne Express' default weight charge applied to packages with incomplete Airbills was an illegal penalty in violation of federal common law, because it was not reasonably tied to Airborne Express' anticipated expenses in handling such a package.

The parties reached a proposed settlement for which this Court gave preliminary approval on October 31, 2003.  The settlement class conditionally certified by the Court was defined as:

> All customers of Airborne Express who mailed a Letter Express package and failed to record the package type and package weight on the airbill, but otherwise satisfied the requirements for securing a Letter Express rate, and who as a result were charged and paid a five pound default weight rate charge on such Letter Express package at any time after April 11, 1992, to November 30, 2003.  It also includes such customers' current and former parent corporations, subsidiaries, divisions, affiliated and related entities, and each of their fiduciaries, administrators, executors, directors, officers, members, employees, agents, insurers, representatives, attorneys, trustees, conservators, successors-in-interest and assigns, including such entities' spouses, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns, as applicable and without limitation.

(Order of Oct. 31, 2003, Conditionally Certifying a Class, ¶ 1.)  Pursuant to the Court's preliminary approval, notice of the Settlement was sent to the settlement class by mail and

---

1 When the parties previously appeared before this Court seeking Final Approval, Plaintiff submitted a Memorandum in Support of Final Approval of Class Action Settlement (the "June 2004 Memorandum") setting forth the procedural history of the matter.  (A copy of the June 2004 Memorandum is submitted herewith as Exhibit A.)

2 On August 15, 2003, Airborne Express' ground operations were acquired by DHL Holdings

(continued . . .)

publication.  (*Id.* ¶ 4.)  On July 6, 2004 this Court conducted a final approval hearing.  At that time, all objectors presented their basis for opposition to the Settlement.

On January 27, 2005, this Court issued its memorandum and order ("Final Approval Order") finally approving all the terms of the settlement except those relating to attorneys' fees, costs, and incentive awards.[3]  In its Final Approval Order, this Court found that all terms of the Settlement reached by the parties were "fair, reasonable, and adequate."  (Final Approval Order, at 17.)

Three groups of objectors appealed to the Seventh Circuit.  On September 11, 2006 the Seventh Circuit issued an opinion vacating the Final Approval Order, and remanding the matter for further proceedings.  (*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ("Seventh Circuit Opinion") attached hereto as Exhibit B, p.15.)  The Seventh Circuit's opinion called for further consideration of the fairness of the settlement, with a focus on "the strength of the plaintiff's case compared to the amount of defendant's settlement offer."  (*Id.* at 12.)  Specifically, the Seventh Circuit Opinion cited three areas for further inquiry on the Settlement: (1) the benefits to *current* class members afforded by the injunctive relief component of the settlement; (2) the propriety of offering pre-paid Letter Express envelopes as a method of compensation; and (3) the operation of a "regressive" payment schedule for class members who were subject to multiple default weight charges.

---

(. . . continued)
(USA), Inc.  However, the underlying litigation was brought against Airborne Express, Inc.

3 The Court reserved ruling on plaintiff's request for attorneys' fees.  In a separate order, the Court utilized the lodestar method with a risk multiplier of two in order to award Class Counsel $600,250.00 in attorneys' fees. Though Class Counsel appealed from the Court's order as to the amount of attorneys' fees, the Seventh Circuit did not reach the question whether the fee award was appropriate. On remand, Class Counsel does not seek any additional fees, and does not intend to pursue any further

(continued . . .)

For the reasons set forth below, none of these areas of inquiry raise any issues of unfairness, and the overall Settlement far exceeds the threshold legal standard for final approval.

## III. LEGAL STANDARD FOR FINAL APPROVAL

Federal courts favor settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996); *E.E.O.C v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985); *Armstrong v. Board of Directors of the City of Milwuakee*, 616 F.2d 305, 313 (7th Cir. 1980). Thus, under Rule 23 of the Federal Rules of Civil Procedure a court may approve a settlement after a hearing based on a finding that the settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1)(C).4 While no one of the "fairness" factor is singled out and given dispositive weight, courts have consistently stated that the relative strength of the plaintiff's case on the merits as compared to what the defendant offers by way of settlement is the most important consideration. *Isby v. Bayh*, 75 F.3d at 1200; *Armstrong*, 616 F.2d at 322; *Grunin v. International House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975).

## IV. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Before the Seventh Circuit analyzed whether final approval of the Settlement should be upheld, the Seventh Circuit first considered whether federal subject matter jurisdiction exists. The Seventh Circuit held that federal jurisdiction does exist based on complete diversity. However, the Seventh Circuit also held that there is no federal question jurisdiction because there is no recognized cause of action for "breach of federal common law." (Seventh Circuit

---

(. . . continued)
appeals of the Court's fee award.

4 In considering the "fairness" factors, courts "do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness." *Armstrong*, 616 F.2d at 315.

(continued . . .)

Opinion, pp. 6-8). Importantly, the *only claim* stated in the Complaint is "breach of federal common law." Therefore, the likelihood that Plaintiff could prevail on the only currently-existing claim in the case is extraordinarily small.[5] When compared to such an attenuated possibility of recovery on the merits, the Settlement offers an extraordinarily generous recovery. *See Mars Steel Corp. v. Continental Illinois Nat'l Bank*, 834 F.2d 677, 683 (7th Cir. 1987) (when the probability of a victory at trial is low, then settlement is an attractive option and settlement should be approved if it gives the class "more than it could realistically have hoped to obtain either by litigation or by separate settlement negotiations–given the underlying weakness of the claim.") Thus, the overall standard for final approval is easily satisfied.

After the case was remanded from the Seventh Circuit, the Court referred the parties and the three objector groups to Magistrate Judge Wilkerson for mediation. This mediation was successful, resulting in the objectors discontinuing any further objection to final approval. Moreover, as there are no other parties with standing to prosecute any other objections to the Settlement, then a Final Approval order by this Court will end this litigation without any further appeals.

### A.   The Injunctive Relief Is A Substantial Benefit to Class Members

In addition to the compensatory amounts paid directly to class members, Airborne Express customers will also benefit from various changes in business practices that Airborne Express will employ over the next four years. (June 2004 Memorandum, p. 4.) Airborne

---

(. . . continued)

5 While the Seventh Circuit explained that it could "imagine state-law claims for consumer fraud and deceptive practices that conceivably could apply," Airborne contends that such claims would not be certifiable at all, let alone on a nationwide basis. (*See* Seventh Circuit Opinion, p. 10.)

(continued . . .)

Express' changes in practice will result in at least an 85% reduction in Default Weight charges

for Letter Express packages. (*Id.*) As discussed in detail in the July 2004 Memorandum, the

valuable injunctive relief secured by this Settlement consists of two major changes in practice:

(i) Package Re-Weigh Changes,[6] and (ii) Changes in Notification of Customers and Other

Services.[7] The value of the changes in practice under the Settlement has been estimated at over

$30 million in the next four years alone. (Affidavit of Douglas Thomas ("Thomas Aff.")

attached hereto as Exhibit C, ¶ 17.)

The $30 million in savings created by the various changes in practices will flow directly

into the pockets of Class members and does not have to be "claimed" in a traditional sense.

*Because Airborne Express has a 96-98% retention rate of its customers*, the class members

should be direct beneficiaries of these various practice changes as they are also the future

customers of the company. (June 2004 Memorandum, pp. 6-9; Hearing of July 6, 2004.) The

opinion of the Seventh Circuit failed to acknowledge this uncontested fact in the record.

Airborne Express' high customer retention rate means that there is an extremely close fit

---

(. . . continued)

6 It is important to note that these changes in package re-weigh procedures were initiated solely
as a result of the Settlement. (Thomas Aff. ¶ 9). As a consequence of DHL's acquisition of Airborne, the
practice of re-weighing Letter Express packages was to be terminated. Instead, as a direct result of this
Settlement, Airborne will increase the frequency with which it re-weighs Letter Express packages,
substantially reducing the number of Default Weight charges.

7 Under the terms of the Settlement Agreement, Airborne Express will initiate a new practice
under which any package weighed by Airborne Express that weighs two pounds or less will be charged its
actual weight, irrespective of any higher weights that customers may have indicated. (June 2004
Memorandum, p. 4.) Airborne Express also will make efforts to increase the frequency with which Letter
Express packages are reweighed specifically because of this settlement. This practice will apply to
packages that have no weights indicated. (*Id.*) Accordingly, any package reweighed at two pounds or
less *will not* have a Default Weight assessed.

between the current class members and the beneficiaries of the injunctive relief. *See Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003).

In *Smith*, the court specifically addressed the value of future injunctive relief in a case where borrowers brought a putative class action for declaratory, injunctive, and monetary relief against a lender and affiliated insurers. The terms of the *Smith* settlement included extensive injunctive relief over a five-year period, including fundamental prospective changes to the procedures for making loans. In approving the class settlement agreement, the *Smith* court specifically determined that, despite the prospective nature of the injunctive relief, current class members benefited because many of them were repeat borrowers. *Id.* at 366.[8] The same reasoning applies in this case based on the high customer retention rate enjoyed by Airborne Express.

**B.     The Pre-Paid Flight-Ready Letter Express Packages Offered to Class Members Represent Generous Monetary Compensation, Which Is Regressively Capped to Reflect that the Voluntary Payment Doctrine is Increasingly Likely to Bar Recovery with Each Successive Default Weight Charge.**

As set forth in the Settlement Agreement, class members who submit complete and valid Proofs of Claim will receive one pre-paid Flight-Ready Letter Express package, or $2.50 in cash, even if they do not submit any records to substantiate their claims.[9]  (Settlement Agreement, pp.

---

8 The *Smith* court found the fact that attorneys' fees were not to be paid out of the common fund weighed in favor of the reasonableness of the settlement. The court also indicated that "[w]hen ascertaining the benefit of a settlement to the class, a court may consider benefits which are not directly pecuniary in nature." *Id.* at 369 n.10. *See F.D. Rich Co., Inc. v. United States for the Use of Industrial Lumber Company, Inc.*, 417 U.S. 116, 129-30 (1974); *Hall v. Cole*, 412 U.S. 1, 7 n.7 (1973).

9 In addition to the compensatory relief discussed herein, the Settlement also secured other forms of monetary relief because Airborne Express has agreed to pay the costs of settlement administration, including the costs of identifying and providing notice to the Settlement Class.

(continued . . .)

7-9). Claimants who submit complete Proofs of Claim and submit records to substantiate their claims will receive up to four pre-paid Flight-Ready Letter Express Packages, or up to $30 in cash. More specifically, if a proof of claim form is substantiated by records, the class member will receive his/her choice of either of the following:

| **Free Package Benefit** | | |
|---|---|---|
| 1-3 default charges | = | 1 Flight-Ready Letter Express package |
| 4-7 default charges | = | 2 Flight-Ready Letter Express packages |
| 8-12 default charges | = | 3 Flight-Ready Letter Express packages |
| 12+ default charges | = | 4 Flight-Ready Letter Express packages |
| **Cash Benefit** | | |
| 1 default charge | = | $2.50 |
| 2 default charges | = | $5.00 |
| 3 default charges | = | $7.50 |
| 4-6 default charges | = | $2.00 per charge |
| 6+ default charges | = | $1.50 per charge up to a maximum of $30.00 |

The Court previously determined that the settlement "properly incorporates a regressive scale and a $30.00 cap to reflect the voluntary payment doctrine's impact on these claims." (Final Approval Order, at 10) (citing cases in all states that enforce the voluntary payment doctrine and finding that "[t]he voluntary payment doctrine is a well-settled rule of law.") The

---

(. . . continued)

-

Court found this regressive scale appropriate "[g]iven that a [class] member is more likely to have full knowledge of the facts after each successive default charge." (*Id.* at 10–11.) Accordingly, the settlement "appropriately incorporated a capped regressive scale to reflect the probability of a member's recovery." (*Id.*, citing *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1997 WL 834345, *2 (M.D. Fla. Nov. 4, 1998); *see also Mars Steel Corp.*, 834 F.2d at 684.)

While the Seventh Circuit acknowledged that the Court properly considered the effect of the voluntary payment doctrine, the Seventh Circuit directed further inquiry as to how "this particular payment schedule and level of compensation is fair" asking the Court to "quantify the value of the plaintiffs' case or … the value of the settlement offer to class members." (seventh Circuit Opinion, p. 12.) To the extent the Seventh Circuit seeks quantitative analysis of the specific number of class members' claims that would be barred by the doctrine, such quantification would be impossible without individually trying the claims of each class member, and considering the specific circumstances of each shipment.[10] Moreover, Airborne Express contends that the voluntary payment doctrine would bar recovery by *all* class members, while Plaintiff contends that the voluntary payment doctrine does not bar *any* class members. Thus, the regressive payment schedule reflects a compromise position acknowledging that, at a

---

10 It would not be possible to consider the circumstances of each class member because Airborne Express lacks sufficient records to even identify all of them during the ten year class period. Prior to the filing of the underlying litigation, Airborne Express had a rolling system of record-retention that retained records for one month. The system did not specifically track which customers were charged the five pound default weight for Letter Express packages under one pound. (Thomas Aff. ¶ 4). As a result of this case, Airborne Express began maintaining specific records which identified customers who had a likelihood of being assessed a five pound default rate. These records were used to create the direct notice mailing list.

minimum, the more often a class member was charged for a default weight and failed to contest it, the more likely the class member is subject to the defense.  Accordingly, the regressive schedule represents a fair and adequate method to compensate class members based on the respective strength of their claims.

With respect to the Seventh Circuit's concern about the use of pre-paid envelopes as a form of compensation, such concerns are unfounded under the circumstances of this case. Undisputed testimony in the records reveals that 98% of past customers are repeat customers that have indicated that they would continue to use Airborne Express' shipping services in the future. (*See* Thomas Aff. ¶ 5.)  Accordingly, this is not a circumstance where plaintiffs will be "forced" into future business ventures with the defendant.  Instead, the unique composition of the class demonstrates that the class members will receive an award of tangible value.[11]

## V.  CONCLUSION

The Seventh Circuit's Opinion rejecting a cause of action for violation of federal common law jeopardizes the overall viability of this suit—and especially the viability of the claims for any class members outside of Illinois.  The Settlement entered into by and between Plaintiff and Defendant secures valuable compensation for class members throughout the country, and is particularly fair when compared to the strength of the case on the merits.  For the reasons stated above, this Settlement should be finally approved, and the parties pray for an

---

11 To the extent the Seventh Circuit was concerned that the aggregate amount of recovery to to the class was insufficient, it is important to note that the Settlement also provides that Airborne Express will pay Class Counsel's fees rather than deduct them from a settlement fund.  As this Court has previously noted, if this case were fully litigated, the administrative costs and attorneys' fees would be deducted from the Class recovery.  *See Richard Mangone v. First USA Bank,* 206 F.R.D. 222, 225 (Reagan, Judge).  Thus, class members received additional recovery in the form of paid attorneys' fees and benefit substantially from a settlement of the case at this juncture.

(continued . . .)

Order finally approving the Settlement in its entirety and awarding such further relief as this

Court deems just and proper.12

By:          _____/s/_____
            Steven A. Katz
            Douglas R. Sprong
            Korein Tillery, LLC
            10 Executive Woods Court
            Belleville, IL 62226
            618-277-1180
            618-277-9804 (facsimile)

            ATTORNEYS FOR PLAINTIFF

By:          _____/s/_____
            Jeffrey Lennard
            Mark Hanover
            Leah Bruno
            Sonnenschein Nath Rosenthal LLP
            8000 Sears Tower
            Chicago, IL  60606
            312-876-8000
            312-876-7934 (facsimile)

            ATTORNEYS FOR DEFENDANT

_____

(. . . continued)

12 Attached hereto as Exhibit D is a proposed Final Judgment Order Approving Settlement.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2007, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Steven A. Katz<br>Douglas R. Sprong<br>Korein Tillery, LLC<br>Gateway One on the Mall<br>701 Market Street, Suite 300<br>St. Louis, Missouri 63101-1820<br>(314) 241-4844<br>Fax: (314) 588-7036 | Robert J. Stein<br>William Bogot<br>Stein Bogot, Ltd.<br>33 North LaSalle Street<br>29th Floor<br>Chicago, Illinois 60602 |
| W. Jeffrey Muskopf<br>Freeark, Harvey, Mendillo, Dennis,<br>Wuller, Cain & Murphy, PC<br>111 W. Washington Street<br>Belleville, IL 62220 | John J. Pentz, Esq.<br>Class Action Fairness Group<br>2 Clock Tower Place<br>Maynard, MA 01754 |

/s/   **Leah R. Bruno**

# **EXHIBIT B**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

SYNFUEL TECHNOLOGIES, LLC, Individually    )
and on Behalf of All Others Similarly Situated,    )
                )
    Plaintiff,    )
                )
  v.    )   Case No: 02-324-DRH
                )
AIRBORNE EXPRESS, INC.,    )
                )   CLASS ACTION
    Defendant.    )

## FINAL JUDGMENT AND
## ORDER APPROVING SETTLEMENT

The Court, after notice to the Settlement Class,[1] held hearings on July 6, 2004 and August 14, 2007 for the purpose of determining:

  1.  Whether the proposed settlement of the claims asserted by Plaintiff against Defendant in this action (the "Settlement"), on the terms set forth in the Settlement Agreement dated October 28, 2003 (the "Settlement Agreement"), is fair, reasonable, and adequate, and should be finally approved by the Court.

  2.  Whether, pursuant to the terms of the proposed Settlement, a judgment should be entered dismissing the Defendant, their present and former parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, employees, agents

---

[1] The "Settlement Class" includes all customers of Airborne who mailed a Letter Express package and failed to record the package type and package weight on the airbill, but otherwise satisfied the requirements for securing a Letter Express rate, and who as a result were charged and paid a five pound default weight rate charge on such Letter Express package at any time after April 11, 1992 to November 30, 2003. It also includes such customers' current and former parent corporations, subsidiaries, divisions, affiliated and related entities, and each of their fiduciaries, administrators, executors, directors, officers, members, employees, agents, insurers, representatives, attorneys, trustees, conservators, successors-in-interest and assigns, including such entities' spouses, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns, as applicable and without limitation.

and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) from any and all manner of action or actions, cause or causes of action, accounts, agreements, bills, bonds, claims, contracts controversies, covenants, damages, debts, demands, dues, executions, judgments, liability, liens, promises, reckonings, specialties, suits, sums of money, trespasses and variances whatsoever and any equitable, legal and administrative relief, whether based on federal, state or local law, statute or ordinance, regulation, contract, common law, or any other source including any claims relating to any of the foregoing, that have been or could have been raised, in the Litigation or before any court or any administrative or governmental body or agency (including any federal or state regulatory commission), tribunal, arbitration panel or self-regulatory organization, on the basis of, connected with, arising out of, or related to, in whole or in part, charges for a 5 pound default weight rate when sending a Letter Express package.

     3.     Whether the attorneys' fees and expenses to Class Counsel set forth in the Settlement Agreement should be approved.

     4.     Whether the payment to the Class Representative set forth in this Settlement Agreement should be approved.

     The Court, having heard all persons properly appearing and requesting to be heard; having excluded all persons from the Settlement Class who properly requested exclusion from the Settlement Class; having considered the papers submitted in support of the proposed Settlement and the oral presentations of counsel; having considered all applicable law (including all legal issues identified in any prior orders); and having considered any objections made properly to the proposed Settlement; finds that there is no just reason for delaying entry of this Final Judgment and Order Approving Settlement.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.     The Court finds that the Settlement Class satisfies all of the requirements of the Federal Rules of Civil Procedure.  Specifically, the Court finds: (1) the Settlement Class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class and to this Settlement Class, (3) the claims of the Class Representatives are typical of the claims of the Settlement Class, and (4) the Class Representatives have protected fairly and adequately the interests of the Settlement Class.  The Court further finds that the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting only individual members, and that this class action is superior to other available methods for the fair and efficient adjudication of the controversy.

2.     The proposed Settlement embodied in the Settlement Agreement is fair, reasonable, adequate, proper, and in the best interests of the Settlement Class.  The proposed Settlement is hereby approved, and the parties are directed to effectuate the terms and provisions of the Settlement.

3.     The Notice of Class Action, heretofore given to members of the Class, is hereby found to be the best notice practicable under the circumstances and is hereby found to satisfy all the requirements of due process and the Federal Rules of Civil Procedure.

4.     This Litigation is dismissed with prejudice, with each party to bear its respective costs (except as provided herein).  All claims asserted in this Litigation are discharged and extinguished, and Plaintiff and each member of the Settlement Class who has not requested proper and timely exclusion from the Settlement Class, (i.e., all Settlement Class members except those listed on Exhibit 1 to this Final Judgment and Order), and their respective heirs, executors, administrators, representatives, agents,

partners, successors, and assigns are hereby deemed to have discharged the
Defendant, their present and former parents, subsidiaries, divisions, affiliates,
stockholders, officers, directors, employees, agents and any of their legal
representatives (and the predecessors, heirs, executors, administrators, successors
and assigns of each of the foregoing) (the "Released Parties") from any and all manner
of action or actions, cause or causes of action, accounts, agreements, bills, bonds,
claims, contracts controversies, covenants, damages, debts, demands, dues,
executions, judgments, liability, liens, promises, reckonings, specialties, suits, sums of
money, trespasses and variances whatsoever and any equitable, legal and
administrative relief, whether based on federal, state or local law, statute or ordinance,
regulation, contract, common law, or any other source including any claims relating to
any of the foregoing, that have been or could have been raised, in the Litigation or
before any court or any administrative or governmental body or agency (including any
federal or state regulatory commission), tribunal, arbitration panel or self-regulatory
organization, on the basis of, connected with, arising out of, or related to, in whole or in
part, charges for a 5 pound default weight rate when sending a Letter Express package.

　　　5.　　All members of the Settlement Class are permanently barred and
enjoined from instituting or prosecuting any action or proceeding asserting any of the
claims, demands, or causes of action referred to in Paragraph 4 above against the
persons described in Paragraph 4 above.  Further, all orders concerning the
administration or interpretation of the settlement after final approval are final and non-
appealable by class members.

　　　6.　　The Court hereby awards Class Counsel attorneys' fees and costs in the
amount of $ 600,250.00, to be paid by Defendant in accordance with the Settlement
Agreement.  The Court further awards Class Representative, Synfuel Technologies,

LLC, $ 10,000.00 for its services as Class Representative, to be paid in accordance with the Settlement Agreement.

7.      The Court concludes that the substantial value of the benefit secured for the class as a result of the efforts of counsel of record to the litigation, the nature and complexity of the issues involved in this case, the extent of the responsibilities assumed by Class Counsel and the level of skill and expertise assumed by Class Counsel support the attorneys' fees awarded herein.

8.      The attorneys' fees and expenses shall be paid to lead counsel for the Class, Steven A. Katz and Douglas R. Sprong, of Korein Tillery LLC, who shall allocate them as they deem appropriate.

9.      The Court finds that all attorneys' fees and expenses awarded are necessary and reasonable, and that the method of determining the paid fees was proper and in accordance with federal law.

10.      Without in any way affecting the finality of this Final Judgment and Order Approving Settlement, in light of the substantial nature of the injunctive relief awarded, the Court shall retain continuing jurisdiction over the Litigation and the parties to the Settlement, for the purposes of entering any further orders as may be necessary to effectuate the Settlement and the provisions of this Final Judgment and Order Approving Settlement.

**SO ORDERED.**

DATED this the 15th day of August, 2007.


/s/          David  RHerndon
United States District Judge